COPY

1  FCOOLEY LLP
2  MICHAEL G. RHODES (116127)
   (rhodesmg@cooley.com)
3  101 California Street, 5th Floor
   San Francisco, CA 94111
   Telephone:  (415) 693-2000
4  Facsimile:  (415) 693-2222

5  MICHELLE C. DOOLIN (179445)
   (doolinmc@cooley.com)
6  DARCIE A. TILLY (239715)
   (dtilly@cooley.com)
7  ERIN E. GOODSELL (262967)
   (egoodsell@cooley.com)
8  4401 Eastgate Mall
   San Diego, CA  92121
9  Telephone:  (858) 550-6000
   Facsimile:  (858) 550-6420

10
11 Attorneys for Defendant
   CONDÉ NAST PUBLICATIONS

FILED
CLERK U.S. DISTRICT COURT

JAN 2 6 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

12              UNITED STATES DISTRICT COURT
13              CENTRAL DISTRICT OF CALIFORNIA
14                    WESTERN DIVISION
15
16                                   CV12- 00719 GHK (EX)
                                     Case No.
17 BRIAN KING, individually and on
   behalf of all others similarly situated,
18                                   NOTICE OF REMOVAL OF
              Plaintiff,             ACTION
19                                   (28 U.S.C. §§ 1332, 1441, & 1453)
              v.
20
   CONDÉ NAST PUBLICATIONS, a
21 Delaware corporation,

22            Defendant.

23 TO PLAINTIFF, HIS ATTORNEYS, AND THE ABOVE-CAPTIONED COURT:

24       PLEASE TAKE NOTICE that defendant Condé Nast Publications ("Condé

25 Nast")[1] removes the above-captioned action from the Superior Court of the State of

26

27 [1] Plaintiff incorrectly alleges Condé Nast Publications is a Delaware corporation.
   As noted below, Condé Nast is an unincorporated division of Advance Magazine
28 Publishers Inc.  Advance Magazine Publishers Inc. is a New York corporation.

California for the County of Los Angeles, where the action is now pending, to the United States District Court for the Central District of California, Western Division. This civil action is removed on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1453. For the reasons set forth below, this Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C. §§ 1332 and 1453.

## PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1. On or about December 22, 2011 plaintiff Brian King commenced a civil action in the Superior Court of the State of California for the County of Los Angeles, entitled *Brian King v. Condé Nast Publications*, Case No. BC475752, by filing a complaint.

2. The complaint, which is styled as a class action, alleges two causes of action. The first cause of action is for an alleged violation of California Civil Code § 1798.83. (Compl., ¶¶ 8, 32-35, 47-60.) The second cause of action is for an alleged violation of California Business & Professions Code §§ 17200, *et seq.* (*Id.* at ¶¶ 61-66.) Plaintiff's complaint arises from his subscription to WIRED magazine, which Plaintiff alleges is owned, operated, and published by Condé Nast. (*Id.*, at ¶¶ 37-39.)

3. On or about December 23, 2011 Plaintiff filed a motion for class certification in the Superior Court of the State of California for the County of Los Angeles. The hearing for the class certification motion is currently scheduled for March 7, 2012.

4. Condé Nast was subsequently served with the summons, complaint, class certification motion and other documents on December 29, 2011. A true and correct copy of the summons is attached as <u>Exhibit A</u>. A true and correct copy of the complaint is attached as <u>Exhibit B</u>. A true and correct copy of the class certification motion is attached as <u>Exhibit C</u>.

NOTICE OF REMOVAL OF ACTION
CASE NO.

5.     On January 4, 2012 the Superior Court of the State of California for the County of Los Angeles entered an order deeming the action "complex." A true and correct copy of the order is attached as <u>Exhibit D</u>.

6.     Condé Nast is not aware of the filing of any other process or pleading.

7.     This Notice of Removal is timely because Condé Nast filed it within thirty days of when Plaintiff served it with the summons and complaint. *See* 28 U.S.C. § 1446(b).

8.     Condé Nast will give Plaintiff written notice as required under 28 U.S.C. § 1446(d) by serving Plaintiff, through his counsel of record, with this Notice of Removal and all documents filed in support thereof and concurrently herewith on the date of filing of this Notice of Removal.

## SUBJECT MATTER JURISDICTION

9.     Under CAFA, a district court shall have original jurisdiction over any civil action styled as a class action in which: (1) the number of members of the proposed plaintiff class is not less than one hundred, in the aggregate; (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2) & (d)(5). If a state court putative class action meets all of these three requirements, it may be removed to federal court. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[.]"). This action meets each of CAFA's requirements.

### THE PROPOSED CLASS DOES NOT HAVE LESS THAN 100 MEMBERS

10.     Plaintiff seeks to certify a class defined as: "All California residents who have provided personal information to Condé Nast." (Compl., ¶ 40.)

11.     Plaintiff alleges that the class "consist[s] of millions of individuals." (*Id.*, ¶ 41.)

NOTICE OF REMOVAL OF ACTION
CASE NO.

12.     Without conceding liability, appropriateness of class treatment, appropriateness of Plaintiff's class definition, or the validity of Plaintiff's claim for relief, if the allegations in Plaintiff's Complaint are accepted as true, there are more that 100 proposed class members. (*Id.*, ¶ 41); *see Phillips v. Wellpoint, Inc.*, No. 10-cv-357-JPG, 2010 WL 4877718, at *2 (S.D. Ill. Nov. 23, 2010) (relying on the allegation in plaintiff's complaint that "the proposed class will exceed 20,000 policyholders and group members" to support a finding of jurisdiction under CAFA).

13.     Accordingly, CAFA's first requirement is satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

### THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

14.     Plaintiff's complaint does not plead a specific amount of damages. As such, removal is proper if Condé Nast establishes by a preponderance of evidence that Plaintiff demands in excess of $5 million in damages in the aggregate for himself and the putative class. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met.").

15.     "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (emphasis in original); *accord Deehan v. Amerigas Partners, L.P.*, No. 08cv1009 BTM (JMA), 2008 WL 4104475, at *2 (S.D. Cal. Sept. 2, 2008); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007).

NOTICE OF REMOVAL OF ACTION
CASE NO.

16. Condé Nast's burden of proof on removal "is not daunting, as courts recognize that . . . a removing defendant is *not* obligated to research, state, and prove the plaintiff's claims for damages." *Korn*, 536 F. Supp. 2d at 1204-05 (emphasis in original; internal quotation marks removed). Indeed, "[w]here a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met." *Id.* at 1205; *accord Deehan*, 2008 WL 4104475, at *2.

17. Plaintiff's claim for relief for alleged violations of California Civil Code § 1798.83 carries a maximum statutory penalty of $500 per violation, or $3,000 per violation if the violation is willful. Cal. Civ. Code § 1798.84(c). Plaintiff alleges entitlement to civil penalties of $3,000 per violation, the statutory maximum for a willful violation, for himself and each class member. (Compl., ¶¶ 9, 35, 60; *see also* Prayer for Relief, ¶ D.)

18. In actions where the plaintiff alleges violations of laws carrying statutory penalties, numerous courts have held that where plaintiff pleads damages up to the statutory maximum, defendants may meet CAFA's amount in controversy requirement by simply showing that there are at least enough putative class claims that, multiplied by the statutory maximum, equal more than $5,000,000. *See Korn*, 536 F. Supp. 2d at 1206 (holding that, where statute prescribed a $1,000 statutory maximum, defendants met CAFA's amount in controversy requirement by showing there were at least 5,001 putative class members); *accord Saulic v. Symantec Corp.*, No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883, at *8 (C.D. Cal. Dec. 26, 2007); *Romeo v. The Home Depot*, No. 06CV1505 IEG (BLM), 2006 WL 6814428, at *2 (S.D. Cal. Oct. 30, 2006).

19. As stated above, Plaintiff contends Condé Nast violated California Civil Code § 1798.83 by failing to make "Shine the Light" disclosures or provide customers with a means to obtain such disclosures with respect to each and every person who provided Condé Nast with personal identification information.

5.

NOTICE OF REMOVAL OF ACTION
CASE NO.

1  (Compl., at ¶¶ 7-9, 29-33); *see Muniz*, 2007 WL 1302504, at *4 (permitting a
2  defendant to utilize a 100% violation rate when calculating amount in controversy
3  since "plaintiff includes no fact-specific allegations that would result in a putative
4  class or violation rate that is discernibly smaller than 100%" and plaintiff "is the
5  master of [his] claims, and if [he] wanted to avoid removal, [he] could have alleged
6  facts specific to [his] claims which would narrow the scope of the putative class or
7  the damages sought. . . .") (internal alterations and quotation marks omitted).

8        20.    Plaintiff further alleges the class "consist[s] of millions of
9  individuals." (Compl., at ¶ 41.)

10        21.    Without conceding liability, appropriateness of class treatment,
11  appropriateness of Plaintiff's class definition, or the validity of Plaintiff's claim for
12  relief, if the allegations in Plaintiff's Complaint are accepted as true, there were far
13  in excess of 1,667 proposed class members in the State of California during the
14  proposed class period. (*Id.*, at ¶ 41); *see Phillips*, 2010 WL 4877718, at *2 (relying
15  on the allegation in plaintiff's complaint that "the proposed class will exceed
16  20,000 policyholders and group members" to support a finding of jurisdiction under
17  CAFA). Thus, the amount alleged by Plaintiff to be "in controversy" in this action
18  exceeds CAFA's $5 million requirement because 1,667 putative class members
19  multiplied by the statutory maximum of $3,000 requested by Plaintiff per violation
20  equals $5,001,000. *See Korn*, 536 F. Supp. 2d at 1206; *Saulic*, 2007 WL 5074883,
21  at *8; *Romeo*, 2006 WL 6814428, at *2.

22        22.    The amount in controversy exceeds $5 million dollars even using the
23  $500 dollar statutory maximum for non-willful violations of Cal. Civ. Code
24  § 1798.83. Plaintiff alleges the putative class consists of "millions" of individuals,
25  (Compl., ¶ 41), which suggests there are at least two million class members.[2]

26
27
28  [2] The plural form of a word denotes more than one number. *See* New Oxford American Dictionary 1346 (3d ed. 2010).

NOTICE OF REMOVAL OF ACTION
CASE NO.

1   However, even multiplying $500 by only one million putative class members

2   results in an amount in controversy that far exceeds $5,000,000.

3       23.    Moreover, under CAFA, the potential cost of an attorneys' fee award

4   should also be considered when calculating the amount in controversy. *Lowdermilk*

5   *v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) ("We have held that

6   attorneys' fees were properly included in the amount in controversy in a class

7   action."); *Yeroushalmi v. Blockbuster, Inc.*, No. CV 05-225-AHM (RCX), 2005

8   WL 2083008, at *3, *5 & n.4 (C.D. Cal. July 11, 2005) (holding that under CAFA,

9   the amount put in controversy includes the potential fee award); *see also Tompkins*

10  *v. Basic Research LL*, No. CIV. S-08-244 LKK/DAD, 2008 WL 1808316, *4 (E.D.

11  Cal. Apr. 22, 2008) (including 25% of the common fund for attorneys' fees when

12  calculating amount in controversy).

13      24.    Here, Plaintiff also contends he is entitled to attorneys' fees. (Compl.,

14  ¶ 66; Prayer for Relief, ¶ E.)

15      25.    Without conceding liability or the appropriateness of Plaintiff's

16  request for attorneys' fees, such fees could also potentially be significant because

17  this is a putative statewide class action with, according to Plaintiff, a class that

18  "consist[s] of millions of individuals." (Compl., at ¶ 41.)  Plaintiff's request for

19  attorneys' fees further takes the amount in controversy far beyond the statutory

20  threshold. *See* 28 U.S.C. § 1332(d)(2).

21               THE PARTIES ARE CITIZENS OF DIFFERENT STATES

22      26.    Plaintiff alleges he is "domiciled in the State of California. (Compl.,

23  ¶ 10.)

24      27.    Condé Nast is an unincorporated division of Advance Magazine

25  Publishers Inc. ("AMPI") (Declaration of John W. Bellando in Support of Notice of

26  Removal of Action ("Bellando Decl."), ¶ 2.)   For diversity purposes, an

27

28

                                  7.

1  unincorporated division's citizenship is the same as the corporation of which it is a

2  part. *Breitman v. May Co. Cal.*, 37 F.3d 562, 564 (9th Cir. 1994).[3]

3      28.   AMPI is a New York corporation.  (*Id.*, at ¶ 3.)  AMPI's executive

4  officers and senior management team and most of its corporate officers work out of

5  AMPI's New York headquarters and executive offices.  (*Id.* at ¶ 4.)  AMPI's

6  corporate policies and procedures are primarily set by its officers at the New York

7  offices, meetings of its board of directors are typically held in New York, and most

8  of its corporate records are maintained at its New York offices. (*Id.*)  Accordingly,

9  AMPI is a citizen of New York for purposes of diversity.  *See Hertz Corp. v.*

10  *Friend*, --- U.S. ----, 130 S. Ct. 1181, 1192 (2010) (holding that a corporation's

11  principal place of business is "the place where a corporation's officers direct,

12  control, and coordinate the corporation's activities" and "it should normally be the

13  place where the corporation maintains its headquarters"); *see also Cariajano v.*

14  *Occidental Petroleum Corp.*, 643 F.3d 1216, 1230 n.2 (9th Cir. 2011) (applying the

15  *Hertz* test to determine the defendant's principal place of business).

16      29.   Plaintiff and all purported putative class members are citizens of

17  California and not citizens of New York, where Condé Nast is a citizen.  (*Id.*, ¶¶ 10,

18  40.)  Consequently, minimum diversity is satisfied under 28 U.S.C.

19  § 1332(d)(2)(A).

20  **VENUE IS PROPER**

21      30.   Removal to this judicial district and division is proper under 28 U.S.C.

22  §§ 1441(a) and 1446(a) because the state court action was originally pending in this

23  judicial district—namely, the Superior Court of the State of California for the

24  County of Los Angeles.

25

26  [3] (*See also* Comp., ¶ 11 (admitting Condé Nast's principal place of business is in New York)); *Korn*, 536 F. Supp. 2d at 1203 ("[P]laintiff alleges in his complaint

27  that defendant is a Delaware corporation with its principal place of business in New Jersey. . . .  A statement in a complaint is a judicial admission. . . .  Plaintiff is

28  bound by the allegations in his complaint that assert defendant's citizenship, for purposes of diversity jurisdiction, is in Delaware and New Jersey.").

8.  NOTICE OF REMOVAL OF ACTION
CASE NO.

## NOTICE TO THE SUPERIOR COURT OF LOS ANGELES COUNTY

31. Contemporaneously with the filing of this Notice of Removal, Condé Nast is filing a true and correct copy of this Notice of Removal and all documents filed in support thereof and concurrently therewith with the clerk of the Superior Court of the State of California for the County of Los Angeles, under 28 U.S.C. § 1446(d).

Dated:          January 26, 2012          COOLEY LLP
                                          MICHAEL G. RHODES (116127)
                                          MICHELLE C. DOOLIN (179445)
                                          DARCIE A. TILLY (239715)
                                          ERIN E. GOODSELL (262967)


                                          _____
                                                   Darcie A. Tilly

                                          Attorneys for Defendant
                                          CONDÉ NAST PUBLICATIONS

9.

# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**CONFORMED COPY
ORIGINAL FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 2 2 2011

John A. Clarke, Executive Officer/Clerk

BY _____, Deputy
Shaunya Wesley

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CONDE NAST PUBLICATIONS, a Delaware corporation,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BRIAN KING, individually and on behalf of all others similarly situated,

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles County Superior Court | CASE NUMBER *(Número del Caso):* 475752 |
|---|---|

Stanley Mosk Courthouse, Central District, 111 N. Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sean Reis, Edelson McGuire LLP, 30021 Tomas Street, Suite 300, RSM, CA 92688 (949) 459-2124

| DATE: *(Fecha)* DEC 2 2 2011 | Clerk, by *(Secretario)* **Shaunya Wesley** | , Deputy *(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Conde Nast Publications, a Delaware corporation

under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

10



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Sean Reis, SBN 184044<br>Edelson McGuire LLP<br>30021 Tomas Street, Suite 300<br>Rancho Santa Margarita, CA 92688<br>TELEPHONE NO.: 949-459-2124   FAX NO.:<br>ATTORNEY FOR *(Name)* Plaintiff Brian King | **CONFORMED COPY**<br>**ORIGINAL FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>DEC 22 2011<br><br>John A. Clarke, Executive Officer/Clerk<br>BY _____, Deputy<br>Shawnye Wesley |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District - Stanley Mosk Courthouse

CASE NAME:
Brian King v. Conde Nast Publications

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited    ☐ Limited<br>(Amount       (Amount<br>demanded     demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC 475752 |
| | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☑ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☑ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties    d. ☑ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve             in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence    f. ☑ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify)*: 2 - Cal. Civ. Code 1798.83; Cal B&P 17200 et seq
5. This case ☑ is   ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12-22-11

Sean Reis
_____       _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice–Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case–Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief From Late Claim
　Other Civil Petition

**CIVIL CASE COVER SHEET**

12

| SHORT TITLE: King v. Conde Nast Publications | CASE NUMBER BC 475752 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES   CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7 ☐ HOURS/ ☑ DAYS

Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A Civil Case Cover Sheet Category No. | | B Type of Action (Check only one.) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

| | | |
|---|---|---|
| LACIV 109 (Rev. 03/11) LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION** | Local Rule 2.0 Page 1 of 4 |

| SHORT TITLE: King v. Conde Nast Publications | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ✔ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1. 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: King v. Conde Nast Publications | | CASE NUMBER |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

15

| SHORT TITLE: King v. Conde Nast Publications | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>14014 Moorpark, #215 |
|---|---|
| CITY:<br>Sherman Oaks | STATE:<br>CA | ZIP CODE:<br>91423 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mok___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 12-22-11

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION** | Local Rule 2.0<br>Page 4 of 4

16

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE**

Case Number _____

C 475752
BC 475752

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirde Hill | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | Hon. John L. Segal | 50 | 508 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 | |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Steven J. Kleifield | 53 | 513 | |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Barbara Scheper | 30 | 400 | Hon. David L. Minning | 61 | 632 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 | |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | **Hon. Emilie H. Elias*** | **324** | **CCW** | X |
| Hon. Michelle R. Rosenblatt | 40 | 414 | Other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |

**\*Class Actions**
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____    JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT –**
**UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil only**).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate**
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate**
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

# LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:
- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):
- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:
- **Mediation**
- **Settlement Conference**

## NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

## COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

## ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
### [CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil only**).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate**
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate**
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:
- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.890-3.898 Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):
- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:
- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party **Select** Panel or may hire someone privately, at their discretion. If the parties utilize the **Random Select** Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

### ADR ASSISTANCE

**For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.**

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office.

LAADR 005 (Rev.12-09)
LASC Approved 05-09

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

**Information About Alternative Dispute Resolution:**

California Rules of Court, rule 3.221, requires counties participating in the Dispute Resolution Programs Act ("DRPA"), to provide information about the availability of local dispute resolution programs funded under DRPA. In Los Angeles County, these services are made possible through major support from the Los Angeles County Department of Community and Senior Services through DRPA. The list of the local dispute resolution programs funded in Los Angeles County is set forth below.

Superior Court of California, Los Angeles County, ADR Office (213) 974-5425
www.lasuperiorcourt.org/ADR

**Staff and volunteers of the following identified agencies are not employees of the Los Angeles Superior Court:**

Asian-Pacific American Dispute Resolution Center (213) 250-8190 www.apadrc.org

California Academy of Mediation Professionals (818) 377-7250 www.mediationprofessionals.org

California Lawyers for the Arts, Arbitration and Mediation Service (310) 998-5590 www.calawyersforthearts.org/

Center for Conflict Resolution (818) 705-1090 www.ccr4peace.org

Inland Valleys Justice Center (909) 621-7479 www.ivjc.org

Korean American Coalition 4.29 Center (213) 365-5999 www.kacla.org

Los Angeles City Attorney's Office Dispute Resolution Program (213) 485-8324
www.lacity.org/mediate

Los Angeles County Bar Association Dispute Resolution Services
(877) 473-7658 (323) 930-1841 (888) 922-1322 (562) 570-1019 www.lacba.org/drs

Los Angeles County Department of Consumer Affairs (213) 974-0825

The Loyola Law School Center for Conflict Resolution (213) 736-1145 www.lls.edu/ccr

City of Norwalk Dispute Resolution Program (562) 929-5603
www.ci.norwalk.ca.us/socialservices2.asp

*These programs do not offer legal advice or help you respond to a summons, but they can assist in resolving your problem through mediation.*

**Dispute Resolution Programs Act**
**Contracts Administration Office: (213) 738-2621**

LAADR 007 (Rev. 04/10)
LASC Approved 07-04

## INFORMATION ABOUT
## ALTERNATIVE DISPUTE RESOLUTION

23

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
  Click on the button to select the appropriate court address.

PLAINTIFF:

DEFENDANT:

| STIPULATION TO PARTICIPATE IN<br>ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

- ☐ Mediation
- ☐ Non-Binding Arbitration
- ☐ Binding Arbitration
- ☐ Early Neutral Evaluation
- ☐ Settlement Conference
- ☐ Other ADR Process (describe): _____

Dated: _____

| | | |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ **Additional signature(s) on reverse**

LAADR 001 10-04
LASC Approved
(Rev. 01-07)

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221
Page 1 of 2

24

| Short Title | Case Number |
|---|---|
| | |

| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

LAADR 001 10-04
LASC Approved
(Rev. 01-07)

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221
Page 2 of 2

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):   FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
       (INSERT DATE)                                        (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:
_____          ➢ _____
        (TYPE OR PRINT NAME)                          (ATTORNEY FOR PLAINTIFF)
Date:
_____          ➢ _____
        (TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)
Date:
_____          ➢ _____
        (TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)
Date:
_____          ➢ _____
        (TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)
Date:
_____          ➢ _____
        (TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)
Date:
_____          ➢ _____
        (TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)
Date:
_____          ➢ _____
        (TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:          FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

<table>
<tr><td>SHORT TITLE:</td><td>CASE NUMBER:</td></tr>
</table>

     iii.   Be filed within two (2) court days of receipt of the Request; and

     iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

---

| SHORT TITLE: | CASE NUMBER: |
|---|---|

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➣ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➣ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➣ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➣ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➣ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➣ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➣ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:   FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

33

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

EXHIBIT B

COPY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 22 2011

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Shaunya Wesley

1  SEAN REIS (sreis@edelson.com) - SBN 184044
   EDELSON MCGUIRE LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
3  Tel: (949) 459-2124
   Fax: (949) 459-2123
4

5  *Counsel for Plaintiff and the Putative Class*

6           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7                      **LOS ANGELES COUNTY**

8  BRIAN KING, individually and on          )  Case No.    BC 475752
   behalf of all others similarly situated, )
9                                           )  **COMPLAINT FOR:**
                                            )
10              Plaintiff,                  )  **(1)   Violations of Cal. Civ. Code § 1798.83**
                                            )
11  v.                                      )
                                            )  **(2)   Violations of Cal. Bus. & Prof. Code**
12  CONDE NAST PUBLICATIONS, a              )         **§§ 17200, *et seq.***
    Delaware corporation,                   )
13                                          )  **DEMAND FOR JURY TRIAL**
                                            )
14              Defendant.                  )  **CLASS ACTION**
                                            )
15                                          )

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

35

1    Plaintiff, Brian King ("Plaintiff"), by and through his attorneys, upon personal knowledge

2    as to himself and his own acts, and upon information and belief as to all other matters, complains

3    and alleges as follows:

4                                **NATURE OF THE ACTION**

5        1.    In 2003, the California Legislature passed the Shine the Light Law, Cal. Civ.

6    Code § 1798.83 (the "Shine the Light Law" or the "Act"), to protect consumers from companies

7    that collect and surreptitiously share their sensitive personal information with third parties. In

8    support of the bill, its author, Senator Liz Figueroa, aptly commented:

9        [s]ecret direct marketing "profiles" of consumers are being exchanged every hour
10       invisibly and routinely by the companies with which they do business. Not only
         are consumers powerless to stop such invasions of privacy, they do not even know
11       whether and to what extent it is taking place.[1]

12       2.    The Act empowers consumers to "shine the light" on companies' data sharing

13   methods by requiring businesses to establish a procedure by which customers can receive an

14   explanation of how their personal information is disclosed to third parties (the "Shine the Light

15   Disclosures" or "Disclosures").

16       3.    Businesses governed by the Act are required to: (1) designate a dedicated mailing

17   address (physical or electronic) or phone/facsimile number where customers can request the

18   company's Shine the Light Disclosures, and (2) ensure that interested customers can readily

19   make such requests or otherwise obtain the Disclosures.

20       4.    Shine the Light Disclosures are necessary because without knowledge of

21   companies' data sharing practices, consumers cannot make informed decisions about which

22   businesses they should entrust with their personal information:

23

24   _____

25   [i]   CALIFORNIA SENATE JUDICIARY COMMITTEE, SB 27 BILL ANALYSIS, Sept. 16, 2003,
     *available at* http://info.sen.ca.gov/pub/03-04/bill/sen/sb_0001-
26   0050/sb_27_cfa_20030916_115403_sen_comm.html (last visited December 19, 2011).

27

28   _____

Because privacy is, by definition, so intensely personal, for a consumer to make a rational and informed and personal choice to opt-in, opt-out, or simply take their business elsewhere, the consumer must know the "who, what, where and when" of how a business handles personal information.[2]

5.      While traditional businesses may display or otherwise make Shine the Light Disclosures available at their physical storefront locations, the Act requires companies with no "brick and mortar" locations to either provide the Shine the Light Disclosures on their websites or to train their managers and employees to notify customers of the addresses and phone numbers where the Shine the Light Disclosures can be obtained.

6.      Defendant Condé Nast Publications ("Condé Nast")—a publishing company with no "brick and mortar" storefronts—owns and operates various internet websites, such as www.condenast.com and www.wired.com. Condé Nast publishes over thirty (30) magazines.

7.      Condé Nast collects and stores a wealth of information about its subscribers, and shares such data with third parties for direct marketing purposes.

8.      Despite the fact that Condé Nast profits by sharing its users' personal information, it intentionally keeps its users in the dark on its information sharing practices by failing to make the Shine the Light Disclosures on its website.

9.      As a result, Condé Nast violates the Shine the Light Law by willfully denying its users an opportunity to exercise their legally proscribed rights under the Act. Therefore, Plaintiff and the Class are entitled to civil penalties of three thousand dollars ($3,000.00) per violation pursuant to California Civil Code section 1798.84(c).

**PARTIES**

10.      Plaintiff, Brian King, is a natural person domiciled in the State of California.

11.      Defendant, Condé Nast Publications, is a Delaware corporation with its principal place of business at 4 Times Square, New York, New York, 10036. Condé Nast does business throughout New York, California and the United States.

---

[2]      *Supra,* note 1, pp. 4-5.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.

13.     This Court has personal jurisdiction over Condé Nast because the improper conduct alleged in the Complaint occurred in, was directed to, and/or emanated from California.

14.     Venue is proper in this Court because a substantial part of Condé Nast's conduct at issue originated or occurred in this County.

## FACTUAL BACKGROUND

I.     <u>The Personal Information Market: Consumer Data Has Monetary Value</u>

15.     In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle recognized that "the digital revolution … has given an enormous capacity to the acts of collecting and transmitting and flowing of information, unlike anything we've ever seen in our life … [and] individuals are concerned about being defined by the existing data on themselves."[3]

16.     More than a decade later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a $26 billion dollar per year online advertising industry in the United States.[4]

17.     The FTC has also recognized that consumer data possesses inherent monetary value within the new information marketplace:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. *Data is currency. The larger the data set, the greater*

---

[3]     The Information Marketplace, Merging and Exchanging Consumer Data, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited December 19, 2011).

[4]     *See*, Web's Hot New Commodity: Privacy, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited December 19, 2011).

*potential for analysis—and profit.*[5]

18.     In today's digital marketplace, consumers engage in *quid pro quo* transactions with online businesses whereby individuals exchange personal information for services.

19.     It is now a nearly ubiquitous practice for online companies that collect consumer information—such as, names, addresses, occupations, political and religious affiliations, sexual orientation, education, and cultural interests—to share such data, for a profit, with numerous third party marketers without any input from, or disclosure to, the source consumer.

20.     In fact, consumers' personal information has become such a valuable commodity that companies now offer individuals the opportunity to sell their personal information themselves.[6] In this way, consumers are becoming more empowered to direct where their personal information is shared, and to directly profit from their own data.

21.     Because Condé Nast deprives its users the ability to control the dissemination of their personal information—by denying them the ability to ascertain where such data is flowing—Condé Nast has diluted the value of its users' property as it exists in the personal information market.

## II.     California's Shine the Light Law

22.     The Shine the Light Law was enacted because while "transparency is the touchstone of consumer confidence in information handling ... by and large, consumers are not aware of the extent to which their personal information is sold."[7] Thus, the Act is designed to "shine the light" on how businesses share and profit from their customers' personal information.

---

[5]     Statement of FTC Commissioner Pamela Jones Harbour, http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited December 19, 2011) (emphasis added).

[6]     "You Want My Personal Data? Reward Me for It," http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited December 19, 2011).

[7]     *See,* CALIFORNIA SENATE JUDICIARY COMMITTEE, SB 27 BILL ANALYSIS, Sept. 16, 2003, *available at* http://info.sen.ca.gov/pub/03-04/bill/sen/sb_0001-0050/sb_27_cfa_20030916_115403_sen_comm.html (last visited December 19, 2011).

23.     As such, under the Act, customers may request, and companies doing business in California must provide, a list of all categories of personal information disclosed by the business within the preceding year, as well as the names and addresses of the companies receiving that information. Cal. Civ. Code § 1798.83(a).

24.     To facilitate such requests, the Act requires businesses to "designate a mailing address, electronic mail address, or, if the business chooses to receive requests by telephone or facsimile, a toll-free telephone or facsimile number, to which customers may deliver requests" to discover how their personal information is being shared with third parties. Cal. Civ. Code § 1798.83(b)(1).

25.     The term "personal information" is broadly defined under the Act, and includes, but is not limited to, an individual's:

> (A) name and address; (B) electronic mail address; (C) age or date of birth; (D) names of children; (E) electronic mail or other addresses of children; (F) number of children; (G) age or gender of children; (H) height; (I) weight; (J) race; (K) religion; (L) occupation; (M) telephone number; (N) education; (O) political party affiliation; (P) medical condition; (Q) drugs, therapies, or medical products or equipment used; (R) the kind of product the customer purchased, leased, or rented; (S) real property purchased, leased, or rented; (T) the kind of service provided; (U) social security number; (V) bank account number; (W) credit card number; (X) debit card number; (Y) bank or investment account, debit card, or credit card balance; (Z) payment history; and (AA) information pertaining to the customer's creditworthiness, assets, income, or liabilities.

Cal. Civ. Code § 1798.83(e)(7).

26.     An Internet business with no "brick and mortar" locations may comply with the Act by adhering to the following provision:

> Add to the home page of its Web site a link either to a page titled "Your Privacy Rights" or add the words "Your Privacy Rights" to the home page's link to the business's privacy policy … The first page of the link shall describe a customer's rights pursuant to this section and shall provide the designated mailing address, e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate.

Cal. Civ. Code § 1798.83(b)(1)(B).

1    27.    Alternatively, and in cases where an Internet business has "employees who

2  regularly have contact with customers," a business may:

3       Notify all agents and managers who directly supervise employees who regularly
        have contact with customers of the designated address or numbers or the means to

4       obtain those addresses or numbers and instruct those employees that customers
        who inquire about the business's privacy practices or the business's compliance

5       with this section shall be informed of the designated addresses or numbers or the
        means to obtain the addresses or numbers.

6  Cal. Civ. Code § 1798.83(b)(1)(A).

7    28.    In short, the Act affords California citizens the right to discover whether

8  businesses are sharing their personal information, and if so, which companies or organizations

9  they are sharing such data with.

10  **III.    A Brief Overview of Condé Nast**

11    29.    Condé Nast publishes magazines for circulation and also operates websites for

12  thirty (30) magazines, including Vogue, Self, GQ, Golf Digest, The New Yorker, and Vanity

13  Fair.

14    30.    In order to subscribe to one of its magazines, consumers are required to provide

15  Condé Nast with certain personal information, including, *inter alia*, their name and address, e-

16  mail address, telephone number, gender, date of birth, and credit card or debit card number.

17    31.    Condé Nast maintains this data on its servers.

18  **IV.    Condé Nast Willfully Violates California's Shine the Light Law**

19    32.    Condé Nast shares its subscribers' personal information, including their names,

20  addresses, e-mail addresses, gender, and dates of birth with third party direct marketing

21  companies for direct marketing purposes.

22    33.    Despite the fact that Condé Nast shares information about its users with third

23  parties for direct marketing purposes, it fails to provide its customers with the Shine the Light

24  Disclosures, or the means through which its customers may obtain the Disclosures, as required

25  by the Act.

26

27

28

CLASS ACTION COMPLAINT

7

1      34.    As such, Condé Nast has chosen to deny California customers their legal right to

2  learn what personal information is being disclosed, who is receiving it, and other legal

3  protections afforded under the Act.

4      35.    Accordingly, Condé Nast intentionally violates California's Shine the Light Law

5  and is liable for civil penalties of three thousand dollars ($3,000.00) per violation pursuant to

6  Cal. Civ. Code § 1798.84(c).

7                    **FACTS RELATING TO PLAINTIFF BRIAN KING**

8      36.    Plaintiff Brian King is a natural person domiciled in the State of California.

9      37.    On or around April 28, 2010, Plaintiff signed up for a one (1) year subscription of

10  WIRED—a magazine owned, operated, and published by Condé Nast.

11      38.    At the time that Plaintiff signed up for his subscription, he provided personal

12  information to Condé Nast, including, *inter alia*, his full name, mailing address, e-mail address,

13  ZIP code, telephone number, gender, birth date, and credit card information.

14      39.    Plaintiff has visited both www.condenast.com and www.wired.com. At all

15  relevant times, Plaintiff used Condé Nast primarily for personal, family, and household purposes.

16                       **CLASS ALLEGATIONS**

17      40.    **Definition of the Class:** Plaintiff Brian King brings this action pursuant to

18  California Code of Civil Procedure § 382 on behalf of himself and a Class of similarly situated

19  individuals, defined as follows:

20      All California residents who have provided personal information to Condé Nast.

21      Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents,

22  successors, predecessors, and any entity in which the Defendant or their parents have a

23  controlling interest and their current and former employees, officers, and directors, (2) the Judge

24  or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's

25  immediate family, (3) persons who execute and file a request for exclusion, (4) the legal

26  representatives, successors, or assigns of any such excluded person, and (5) all persons who have

27

28

1   previously had claims similar to those alleged herein finally adjudicated or who have released
2   their claims against Defendant.

3       41.    **Numerosity:** The exact number of the members of the Class is unknown and is
4   not available to Plaintiff, but the Class is believed to consist of millions of individuals. Thus,
5   individual joinder in this case is impracticable. Class members can be easily identified through
6   Defendant's records.

7       42.    **Commonality and Predominance:** There are many questions of law and fact
8   common to the claims of Plaintiff and the other members of the Class, and those questions
9   predominate over any questions that may affect individual members of the Class. Common
10  questions for the Class include but are not limited to the following:

11          (a)   Whether the Class members are "customers" of Defendant, as that term is
12              defined by Cal. Civ. Code § 1798.83(e)(1);
13          (b)   Whether each Class member had an "established business relationship"
14              with Defendant, as that term is defined by Cal. Civ. Code § 1798.83(e)(5);
15          (c)   Whether Defendant made the Shine the Light Disclosures required by Cal.
16              Civ. Code § 1798.83(b)(1)(B);
17          (d)   Whether Defendant's website violates Civ. Code § 1798.83(b)(1)(B);
18          (e)   Whether Defendant has employees who regularly have contact with
19              customers, as defined by Cal. Civ. Code § 1798.83(e)(4);
20          (f)   Whether Defendant otherwise complied with the requirements of Cal. Civ.
21              Code § 1798.83(b)(1);
22          (g)   Whether Defendant's failure to meet the notice requirements of §
23              1798.83(b)(1)(B) constitutes a violation of § 1798.83;
24          (h)   Whether Defendant's conduct constituted a willful, intentional, or reckless
25              violation of § 1798.83; and
26          (i)   Whether Plaintiff and the Class are entitled to injunctive relief.

27

28

CLASS ACTION COMPLAINT

9

43

1    43.    **Typicality:** The factual and legal bases of Condé Nast's liability to Plaintiff and

2  to the other members of the Class are the same and resulted in injury to Plaintiff and all of the

3  other members of the Class. Plaintiff and the other members of the Class have all suffered harm

4  as a result of Condé Nast's wrongful conduct.

5    44.    **Adequate Representation:** Plaintiff will fairly and adequately represent and

6  protect the interests of the Class members, and have retained counsel competent and experienced

7  in complex class actions. Plaintiff has no interest antagonistic to those of the Class and

8  Defendant has no defenses unique to Plaintiff.

9    45.    **Appropriateness:** This class action is appropriate for certification because class

10  proceedings are superior to all other available methods for the fair and efficient adjudication of

11  this controversy and joinder of all members of the Class is impracticable. The damages suffered

12  by the individual members of the Class will likely be small relative to the burden and expense of

13  individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct.

14  Thus, it would be virtually impossible for the individual members of the Class to obtain effective

15  relief for Defendant's misconduct. Even if each member of the Class could sustain such

16  individual litigation, it would not be preferable to a class action because individual litigation

17  would increase the delay and expenses to all parties due to the complex legal and factual

18  controversies presented in this Complaint. By contrast, a class action presents far fewer

19  management difficulties and provides the benefits of single adjudication, economy of scale, and

20  comprehensive supervision by a single court. Economies of time, effort, and expense will be

21  fostered and uniformity of decisions will be ensured.

22    46.    **Policies Generally Applicable to the Class:** This class action is also appropriate

23  for certification because Defendant has acted or refused to act on grounds generally applicable to

24  the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief

25  with respect to the Class as a whole. The policies of the Defendant challenged herein apply to

26

27

28

1    and affect all members of the Class uniformly, and Plaintiff's challenge of these policies hinges

2    on Defendant's conduct, not on facts or law applicable only to Plaintiff.

3
                                **FIRST CAUSE OF ACTION**
4                         **Violations of California's Shine the Light Law**
                                  **(Cal. Civ. Code § 1798.83)**
5                           **(On behalf of Plaintiff and the Class)**

6        47.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

7        48.    Plaintiff and the Class are "customers" of Condé Nast, as that term is defined by

8    Cal. Civ. Code § 1798.83(e)(1).

9        49.    Plaintiff and the Class are engaged in an ongoing "established business

10   relationship" with Condé Nast as that term is defined by Cal. Civ. Code § 1798.83(e)(5).

11       50.    Condé Nast cannot utilize the notice option available under Cal. Civ. Code §

12   1798.83(b)(1)(A) because, as a business operating almost exclusively online, it does not have

13   "employees who regularly have contact with customers," as that term is defined by Cal. Civ.

14   Code § 1798.83(e)(4).

15       51.    In any event, and upon information and belief, Condé Nast does not instruct or

16   otherwise train its employees to respond to customer inquiries about obtaining Condé Nast's

17   Shine the Light Disclosures as required by Cal. Civ. Code § 1798.83(b)(1)(A).

18       52.    Further, on information and belief, Condé Nast does not conduct business through

19   "brick and mortar" stores in California, meaning it cannot avail itself of the notice option set

20   forth in Cal. Civ. Code § 1798.83(b)(1)(C).

21       53.    Consequently, Condé Nast must utilize the notice option under Cal. Civ. Code §

22   1798.83(b)(1)(B). As such, Condé Nast must affirmatively disclose specific information to its

23   customers through its Web site.

24       54.    Condé Nast willfully violates the Act by, among other things, (i) failing to add a

25   hyperlink entitled "Your Privacy Rights" to its home page, (ii) failing to add a hyperlink to a

26   page titled "Your Privacy Rights," (iii) failing to designate a mailing address, e-mail address,

27   telephone number, or facsimile number for customers to deliver requests, and/or (iv) failing to

28

CLASS ACTION COMPLAINT
                                          11

1    describe its California customers' rights under the Shine the Light Law. *See* Cal. Civ. Code §

2    1798.83(b)(1)(B). (True and accurate copies of Condé Nast's home page and privacy policy are

3    attached as Exhibits A and B, respectively.)

4        55.    Plaintiff's and the Class's personal information has monetary value, and Condé

5    Nast's failure to comply with Cal. Civ. Code § 1798.83(b)(1) deprives Plaintiff and the Class of

6    their statutorily-guaranteed right to monitor and control the disclosure and use of that data. As

7    such, Condé Nast has diluted the value of Plaintiff's and the Class's personal property, and

8    deprived them of the opportunity to sell their personal property for their own financial gain.

9    Accordingly, Plaintiff and the Class have sustained, and continue to sustain, monetary injuries as

10    a direct and proximate cause of Condé Nast's violation of Cal. Civ. Code § 1798.83.

11        56.    Condé Nast's failure to comply with Cal. Civ. Code § 1798.83(b) also deprives

12    Plaintiff and the Class of the ability to make informed decisions with respect to their privacy and

13    transmission of their personal information. Further, Condé Nast's supposed privacy procedures

14    provide fewer protections to Plaintiff and the Class, thereby depriving them of their protections

15    and rights under the Act.

16        57.    At all times relevant to this lawsuit, Condé Nast has failed to provide Plaintiff or

17    the Class with disclosures required by Cal. Civ. Code § 1798.83(b)(1).

18        58.    Condé Nast is a "business required to comply with [Section 1798.83]." and none

19    of the exceptions in Sections 1798.83 or 1798.84 apply. *See* Cal. Civ. Code § 1798.83(b)(1).

20        59.    Condé Nast shares its customers' personal information with third parties for direct

21    marketing purposes.

22        60.    Accordingly, Plaintiff and the Class are entitled to civil penalties of three

23    thousand dollars ($3,000.00) per violation pursuant to California Civil Code section 1798.84(c).

24                                  **SECOND CAUSE OF ACTION**

25    **Violation of California's Unfair Competition Law**
     **Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

26    **(On Behalf of Plaintiff and the Class)**

27        61.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

28

CLASS ACTION COMPLAINT

1    62.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

2    §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in

3    commercial markets for goods and services.

4    63.    The UCL prohibits any unlawful, unfair or fraudulent business act or practice.

5    64.    As discussed above, Condé Nast has violated the unlawful prong of the UCL in

6    that its conduct violated the Shine the Light Law, Cal. Civ. Code § 1798.83.

7    65.    Plaintiff's and the Class's personal information has monetary value, and Condé

8    Nast's failure to comply with Cal. Civ. Code § 1798.83(b) deprives Plaintiff and the Class of

9    their statutorily-guaranteed right to monitor and control the disclosure and use of that data. As

10    such, Condé Nast has diluted the value of Plaintiff's and the Class's personal property, and

11    deprived them of the opportunity to sell their personal property for their own financial gain.

12    66.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff, on his own behalf and on

13    behalf of the Class, seeks an order requiring Condé Nast to (1) immediately cease the unlawful

14    practices described herein; (2) make full restitution of all funds wrongfully obtained by sharing

15    and/or selling Plaintiff's and the Class's personal information; and (3) pay interest, attorney's

16    fees, and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

17    **PRAYER FOR RELIEF**

18    WHEREFORE, Plaintiff Brian King, individually and on behalf of the Class, prays for

19    the following relief:

20    A.    Certify the Class as defined above, appoint Plaintiff as Class representative, and

21    designate his counsel as Class Counsel;

22    B.    Declare that Defendant's actions, as described herein, violate California's Shine

23    the Light Law, Cal. Civ. Code § 1798.83, and the Unfair Competition Law, Cal. Bus. & Prof.

24    Code §§ 17200, *et seq.*

25    C.    Award injunctive and other equitable relief as is necessary to protect the interests

26    of the Class, including, *inter alia*, entering an Order: (i) prohibiting Defendant from engaging in

27

28

1    the wrongful and unlawful acts described herein; and (ii) requiring Defendant to add to its

2    website the information required by Cal. Civ. Code § 1798.83(b)(1)(B);

3         D.     Award damages, including civil penalties of three thousand dollars ($3,000.00)

4    per violation of Cal. Civ. Code § 1798.83 to Plaintiff and the Class;

5         E.     Award Plaintiff and the Class their reasonable litigation expenses and attorneys'

6    fees pursuant to Cal. Civ. Code § 1798.84(g) and Cal. Code Civ. Proc. § 1021.5.

7         F.     Award Plaintiff and the Class pre- and post-judgment interest, to the extent

8    allowable; and

9         G.     Award such other and further relief as equity and justice may require.

10                                   **JURY TRIAL**

11        Plaintiff demands a trial by jury for all issues so triable.

12

13   Dated: December 22, 2011                        Respectfully submitted,

14                                                   **BRIAN KING**, INDIVIDUALLY AND
                                                     ON BEHALF OF ALL OTHERS SIMILARLY
15                                                   SITUATED,

16

17                                          By:  _____
                                                 One of Plaintiff's attorney's

18
     SEAN P. REIS (sreis@edelson.com) - SBN 184044
19   EDELSON MCGUIRE, LLP
     30021 Tomas Street, Suite 300
20   Rancho Santa Margarita, California 92688
     Telephone: (949) 459-2124
21   Facsimile: (949) 459-2123

22

23

24

25

26

27

28
     CLASS ACTION COMPLAINT
                                        14

# EXHIBIT A



# CONDÉ NAST

## Provocative, influential, award-winning content.
### Across brands. Across platforms. Across continents.

CONDÉ NAST DIGITAL

FAIRCHILD FASHION MEDIA

CONDÉ NAST STORE

THE CARTOON BANK

CONDÉ NAST HOME

MEDIA KITS

SUBSCRIBE

CAREERS

PRESS ROOM

**VISIT OUR SITES**

Vogue
W
WWD
Style
Glamour
Allure
Self
Nutrition Data
Teen Vogue
GQ
Details
Architectural Digest
Brides
Lucky
FN
Golf Digest
Golf World
Vanity Fair
Bon Appétit
Epicurious
Condé Nast Traveler
Concierge
Jaunted

open in browser  PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

50

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

Hotel Chatter
Vegas Chatter
Wired
Reddit
Ars Technica
Parade
The New Yorker

# EXHIBIT B

# User Agreement and Privacy Policy

Last Revised: August 1, 2011

To jump to our Privacy Policy, click here

To opt-out of Third Party Tracking Technologies, click here

To be removed from Condé Nast mailing lists, click here

If you have a complaint about another user, click here

Kids and parents click here

I.   INTRODUCTION
II.  MONITORING AND COMPLAINTS AGAINST OTHER USERS
III. REGISTRATION AND ACCOUNT/PROFILE CREATION
     1.  Registration Information
     2.  Fees and Payment
IV.  SENSITIVE INFORMATION DISCLAIMER
V.   RULES OF USAGE
     1.  Use of the Service by You
     2.  Prohibitions on Use of the Service
     3.  Comments on the Service are not Necessarily Endorsed by Us
     4.  Use of Content Supplied by You
     5.  Editing, Additions, and Deletions
     6.  Copyright Complaints
     7.  Merchandise, Products and/or Services Available on or through the Service
     8.  Indemnification
     9.  Disclaimer of Warranty and Limitation of Liability
     10. Termination or Suspension of the Service, Your Use of the Service, and/or the Agreement

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

11. Communications to You
12. Associated Press
13. Mobile Participants
14. Disputes and Jurisdiction
15. General

VI. PRIVACY POLICY
1. The Type of Information the Service Collects
2. How the Service Uses Information About You
3. Local Device Storage and other Tracking Technologies
4. How to Opt-Out of Third Party Tracking Technologies
5. Transfer of Information
6. Information Security and Notification
7. Kids and Parents
8. Privacy Policy Coordinator

I. INTRODUCTION

This User Agreement and Privacy Policy governs each website, mobile site, application, and/or other service, regardless of how distributed, transmitted, published, or broadcast (each, a "Service") provided by Condé Nast, its parent, subsidiaries and/or affiliates ("we," "us," or "our") that links to this User Agreement and Privacy Policy, which is binding on all those who access, visit and/or use the Service, whether acting as an individual or on behalf of an entity, including you and all persons, entities, or digital engines of any kind that harvest, crawl, index, scrape, spider, or mine digital content by an automated or manual process or otherwise (collectively, "you" or "your").

Please read this User Agreement and Privacy Policy carefully. You can access this User Agreement and Privacy Policy any time in the footer of the Service's home page or initial screen. **Your access, visitation and/or use of the Service, including without limitation any registration on any aspect of the Service, will constitute your agreement to this User Agreement and Privacy Policy.** If you do not agree with the terms and conditions of this User Agreement and Privacy Policy, you may not access, visit and/or use the

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

open in browser    PRO version    Are you a developer? Try out the HTML to PDF API    pdfcrowd.com

Service.

The User Agreement and Privacy Policy may be modified from time to time; the date of the most recent revisions will appear on this page, so check back often. Continued access of the Service by you will constitute your acceptance of any changes or revisions to the User Agreement and Privacy Policy.

If you breach, violate, fail to follow, or act inconsistently with the rules, restrictions, limitations, terms and/or conditions that apply to the Service, whether listed in this User Agreement and Privacy Policy, posted at various points in the Service, or otherwise communicated to users of the Service (collectively, the "Agreement"), we may terminate, discontinue, suspend, and/or restrict your account/profile, your ability to access, visit, and/or use the Service or any portion thereof, and/or the Agreement, including without limitation any of our purported obligations hereunder, with or without notice, in addition to our other remedies. In addition, we may curtail, restrict, or refuse to provide you with any future access, visitation, and/or use of the Service. We reserve the right, in addition to our other remedies, to take any technical, legal, and/or other action(s) that we deem necessary and/or appropriate, with or without notice, to prevent violations and enforce the Agreement and remediate any purported violations. You acknowledge and agree that we have the right hereunder to an injunction without posting a bond to stop or prevent a breach or violation of your obligations under the Agreement.

In the event of any conflict or inconsistency between the terms and conditions of this User Agreement and Privacy Policy, and any rules, restrictions, limitations, terms and/or conditions that may be posted at various points in the Service or otherwise communicated to users of the Service, we shall determine which rules, restrictions, limitations, terms and/or conditions shall control and prevail in our sole discretion, and you specifically waive any right to challenge or dispute such determination.

Among other things, the Agreement governs all text, articles, photographs, images, graphics, illustrations, creative, copy, artwork, video, audio, music, podcasts, ringtones, games, trademarks, trade names, service marks, and other brand identifiers, designs, plans, software, source and object code, algorithms, data, statistics, analysis, formulas, indexes, registries, repositories, and all other content, information, and materials (collectively, "Content") available on or through the Service, whether posted, uploaded, transmitted, sent or

55

otherwise made available by us, our licensors, vendors, and/or service providers, or by you, and/or other users or third parties, including any such Content uploaded manually or bookmarked by you and/or other users.

## II. MONITORING AND COMPLAINTS AGAINST OTHER USERS

### 1. Monitoring

We strive to provide an enjoyable online experience for our users, so we may monitor activity on the Service, including in the social, community and public discussion areas, photo and video galleries, bulletin boards, forums, chats, blogs, personal/job search and other classified ads, and elsewhere, to foster compliance with the Agreement. You hereby specifically agree to such monitoring. Nevertheless, we do not make any representations, warranties or guarantees that: (1) the Service, or any portion thereof, will be monitored for accuracy or acceptable use, (2) apparent statements of fact will be authenticated, or (3) we will take any specific action (or any action at all) in the event of a challenge or dispute regarding compliance or non-compliance with the Agreement. We generally do not pre-screen Content before it is posted, uploaded, transmitted, sent or otherwise made available on or through the Service by users, so you may be exposed to Content that is opinionated, offensive, and/or inappropriate, including Content that violates the Agreement.

### 2. What to Do if You Have a Complaint Against Another User

A. Remember that by using the publicly accessible portions of our Service you may be exposed to Content that is opinionated, offensive, and/or inappropriate, including Content that violates the Agreement, but not all of such Content is actionable. We ask that you not use the Service, or lodge complaints against other users, to facilitate a personal dispute. If you have a legitimate complaint about another user, please do the following:

■ Harassment: If you have reason to believe that another person is using the Service in a way that is harmful to you (e.g., to impersonate or imitate you, or to stalk, bully, threaten, intimidate or otherwise harass you), we urge you to contact your local authorities, or appropriate state

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

56

or federal agencies.

- Copyright Complaints: If you have reason to believe that your Content has been copied and/or is accessible on the Service in a way that constitutes copyright infringement, or that the Service contains links or other references to another site, application, destination or service that contains Content or activity that infringes your copyright rights, you may notify us as described below in the section entitled <u>Copyright Complaints</u>.

- CyberCrime: If you have reason to believe you may be the victim of an online crime, such as identity theft, fraud, infringement, or hacking, you may contact the Internet Crime Complaint Center, at www.ic3.gov, a partnership between the Federal Bureau of Investigation (FBI), the National White Collar Crime Center (NW3C), and the Bureau of Justice Assistance (BJA).

B. **IMPORTANT:** FALSE OR INACCURATE ACCUSATIONS THAT OTHERS HAVE COMMITED A CRIME, INAPPROPRIATE ACT, OR VIOLATION OF THIS AGREEMENT, COULD BE A VIOLATION OF CRIMINAL AND/OR CIVIL LAW, OR OTHERWISE EXPOSE YOU TO LIABILITY FOR DAMAGES (INCLUDING COSTS AND ATTORNEYS' FEES).

## III. REGISTRATION AND ACCOUNT/PROFILE CREATION

1. **Registration Information:**

A. We may at times require that you register for certain products and/or services, and/or to make purchases, or register and/or set up an account/profile to access, visit and/or use certain portions of the Service, or the Service as a whole, in which case you may be provided, or required to choose, a password and/or User ID, and you may provide a credit, debit, or charge card number, or other payment information, as well as your name, telephone number(s), email and/or street address, and other personally identifiable information. Other information such as your age, gender, an avatar, and the number for your mobile or other device may also be requested. In addition, you may be asked to send us similar information via messaging (e.g., email, SMS, MMS, or other

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

57

technologies). All such information shall be referred to in the Agreement as your "Registration Information". We may use and share your Registration Information as described in our Privacy Policy.

B. You agree, represent, warrant, and guarantee that all Registration Information provided by you is true, accurate, complete, up-to-date, and solely yours. You may not impersonate, imitate or pretend to be somebody else when registering and/or setting up an account/profile on the Service. If any of your Registration Information changes, you must update it promptly by using the mechanism or contact information on the Service that allows you to change or update your Registration Information, if available. If no such mechanism or contact information is available on the Service, please notify our Privacy Policy Coordinator as described in our Privacy Policy. WE AND OUR INDEMNITEES (AS DEFINED BELOW), SHALL HAVE NO LIABILITY ASSOCIATED WITH OR ARISING FROM YOUR FAILURE TO MAINTAIN ACCURATE, COMPLETE OR UP-TO-DATE REGISTRATION INFORMATION, INCLUDING WITHOUT LIMITATION YOUR FAILURE TO RECEIVE CRITICAL INFORMATION. NEITHER WE NOR OUR INDEMNITEES SHALL BE RESPONSIBLE FOR VERIFYING YOUR REGISTRATION INFORMATION.

C. We reserve the right at any time, with or without notice, to remove or require a change to or repossess any password and/or User ID that has been provided to you, any avatar you may be using or other Registration Information, or otherwise change the access means or methods for portions of the Service, the Service as a whole, or certain products and/or services.

D. You will be solely responsible for maintaining the confidentiality of your Registration Information. You may not authorize or permit anyone else to access and/or use your Registration Information, or access, visit and/or use the Service by use of your account/profile and/or Registration Information. You may not access and/or use anyone else's Registration Information, or access, visit and/or use the Service by use of anyone else's account/profile and/or Registration Information. You may not sub-license, transfer, sell, rent or assign your Registration Information to any third party without our written approval. Any attempt to do so will be null and void and shall be considered a material breach of the Agreement.

E.  You are solely responsible for all access or visitation to, usage of, or activity on, your account/profile including, but not limited to, use of the account/profile by any person who uses your Registration Information, with or without authorization, or who has access to any computer, mobile or other device on which your account/profile resides or is accessible. You acknowledge and agree that we may, and you specifically authorize us to, process all transactions, including without limitation purchases and/or registration for additional merchandise, products and/or services, including without limitation Content, that are initiated by use of your Registration Information.

F.  If you have reason to believe that your account/profile is no longer secure (for example, in the event of a loss, theft or unauthorized disclosure or use of your Registration Information), you must immediately change the affected Registration Information by using the mechanism or contact information on the Service, if available, and/or close the account/profile. If no such mechanism or contact information is available on the Service, please immediately notify our Privacy Policy Coordinator as described in our Privacy Policy.

2.  **Fees and Payments:**

A.  We and our licensors, vendors, and/or service providers may charge you fees for merchandise, products and/or services, including without limitation Content, offered for sale, rental or auction on or through the Service, and/or for access to portions of the Service or the Service as a whole. You agree to pay all fees and charges, including applicable taxes and surcharges, incurred through your activity on or through the Service and/or through your account/profile at the rates in effect for the billing period in which such fees and charges are incurred (such fees, charges, taxes, and surcharges shall collectively be referred to as "Fees"). Unless otherwise specified on the Service, all Fees will be quoted and charged in U.S. dollars. We and our licensors, vendors, and/or service providers reserve the right to change the amount of, or basis for determining, any Fees, and to institute new Fees, effective upon publication of such revised pricing on the Service.

B.  If you submit a credit, debit, or charge card number, or other payment information to us upon registration, at the time of purchase, or otherwise, you authorize, give us permission, and direct us

59

open in browser PRO version Are you a developer? Try out the HTML to PDF API

to retain such information and to charge all Fees to such payment method.

C. We may charge Fees in advance and on a daily, monthly, yearly, lump sum, or other basis. Fees for certain merchandise, products and/or services, including without limitation Content, may be invoiced on your mobile carrier's bill. We may, in our sole discretion, charge Fees to your designated payment method individually, or elect to aggregate Fees for some or all of your purchases. All Fees are due promptly and are non-refundable. You must notify us about any billing problems or discrepancy within thirty (30) days after they first appear on your statement; otherwise, you waive any right to challenge or dispute such problem or discrepancy.

D. If Fees cannot be charged to the payment method you designate, or payment is returned to us for any reason, including charge back, we reserve the right, in addition to our other remedies, to: (i) demand immediate payment of all outstanding Fees due to us from you; (ii) assess an additional 1.5 percent late charge, or the highest amount allowed by law, whichever is lower; (iii) take any and all lawful steps necessary to collect Fees owed to us, and you will be responsible for all costs and expenses incurred in connection with such collection activity, including collection fees, court costs, and attorneys' fees; (iv) charge such Fees to any other payment method you have on file with us; and (v) terminate, discontinue, suspend, and/or restrict your account/profile, your ability to access, visit and/or use the Service or any portion thereof, and/or the Agreement, including without limitation any of our purported obligations hereunder.

E. In addition, you are responsible for obtaining and maintaining at your own expense all equipment, hardware, software, and telephone, mobile, wireless, Internet and other services necessary to access, visit and/or use the Service. If you are accessing the Service via a mobile device, your mobile carrier may charge you fees for data, text messaging, and other mobile access or communications services.

## IV. SENSITIVE INFORMATION DISCLAIMER

1. While you may freely discuss topics of interest to you, and the Service may include general Content

60

relating to a range of topics, including medical, health, legal, tax, or financial issues, you should not rely on the Service for individual advice on such issues. Instead, we recommend that you talk in person with a qualified professional. You alone will bear the sole responsibility for evaluating the merits and/or risks associated with use of Content obtained on or through this Service before making any decisions based on such Content.

2.  THE CONTENT AVAILABLE ON OR THROUGH THIS SERVICE IS IN NO WAY INTENDED TO AND SHALL NOT BE CONSTRUED TO: (A) CONSTITUTE PROFESSIONAL MEDICAL, HEALTH, LEGAL, TAX, OR FINANCIAL ADVICE; (B) RECOMMEND, ENDORSE, OR ADVISE REGARDING ANY FINANCIAL INSTRUMENT OR INVESTMENT STRATEGY; OR (C) DIAGNOSE, CURE, OR TREAT ANY MEDICAL, HEALTH OR OTHER CONDITION. ALWAYS SEEK THE ADVICE OF A QUALIFIED PROFESSIONAL. FOR EXAMPLE, SEEK THE ADVICE OF YOUR PHYSICIAN OR OTHER QUALIFIED HEALTH PROVIDER PRIOR TO STARTING ANY NEW DIET AND ASK YOUR DOCTOR ANY QUESTIONS YOU MAY HAVE REGARDING A MEDICAL CONDITION. IN ADDITION TO ALL OTHER LIMITATIONS AND DISCLAIMERS IN THE AGREEMENT, WE AND OUR LICENSORS, VENDORS, AND/OR SERVICE PROVIDERS DISCLAIM ANY LIABILITY OR LOSS IN CONNECTION WITH THE CONTENT OBTAINED ON OR THROUGH THIS SERVICE.

## V.  RULES OF USAGE:

### 1.  Use of the Service by You:

A.  The Service is not intended for users under the age of 13, and we do not knowingly collect personally identifiable information from users under the age of 13. Such users are expressly prohibited from registering for the Service or submitting their personally identifiable information to us, and from using portions of the Service for which registration is required, such as our social, community and public discussion areas, photo and video galleries, bulletin boards, forums, chats, blogs, personal/job search and other classified ads, contests/sweepstakes, and elsewhere.

B.  You shall ensure that all equipment, hardware, software, products and/or services you use to

61

open in browser PRO version     Are you a developer? Try out the HTML to PDF API

access, visit, or use the Service does not disturb or interfere with our operation of the Service, or impede or interfere with others' access, visitation and/or use of the Service. We reserve the right, in addition to our other remedies, with or without notice, to immediately disconnect from the Service any equipment, hardware, software, product and/or services causing interference with us, our licensors, vendors, service providers, the Service or any Content.

C.  If you provide to us the number for a mobile or other device, or we obtain the device identifier for a device you are using, you agree, represent, warrant, and guarantee that such device is registered in your name and owned by you, or that you have permission of the device owner(s).

D.  Unless otherwise specified, the Service is intended for your personal, non-commercial use only. You are solely responsible for all usage of, or activities on, the Service by you and by those you authorize or allow to use, or provide access to, the Service, for example, by authorizing or allowing access to your account/profile or any computer, mobile or other device on which the Service resides or is accessible.

E.  You acknowledge that we have not reviewed and do not necessarily endorse the Content of sites, applications, destinations or services linked to or accessible from this Service and are not responsible for the Content or actions of any other sites, applications, destinations or services. Your linking to or accessing any other site, application, destination or service is at your sole risk.

F.  You must comply with all local, state, federal, provincial, national, international, and foreign laws, rules, and regulations in accessing and using the Service, and will immediately notify us if you learn of or suspect a security breach or any illegal activity in connection with the Service.

G.  You must comply with all applicable import and export control laws, rules, and regulations of the United States and other countries, and you must not transfer, by electronic transmission or otherwise, any Content subject to restrictions under such laws, rules, or regulations to a site, application, destination, location, person or entity, or for an end use, prohibited thereby. You will not post, upload, transmit, send or otherwise make available any Content on or through the Service

pdfcrowd.com

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

that cannot be exported without prior government authorization or notification, including without limitation certain types of encryption software.

H.   You represent and warrant that (i) you are not located in a country that is subject to a U.S. Government embargo, or that has been designated by the U.S. Government as a "terrorist supporting" country; and (ii) you are not listed on any U.S. Government list of prohibited or restricted parties.

I.   Content that is provided by us, our licensors, vendors and/or service providers, including without limitation photos, images, text, music, audio, videos, podcasts, trademarks, trade names, service marks and other brand identifiers, the organization, design, compilation, and "look and feel" of the Service, and all advertising thereon, is protected by local, state, federal, provincial, national, international, and foreign copyright, trademark and other intellectual property laws, rules, and regulations, and is the property of us or our licensors, vendors and/or service providers.

J.   Certain Content may be made available to you on or through the Service for download, installation, and/or streaming on your computer, mobile or other device, and via Real Simple Syndication (RSS), such as photos, images, text, music, audio, videos, podcasts, ringtones, games, graphics, or software. Such Content is subject to the same terms, conditions, limitations and restrictions applicable to all Content provided by us, our licensors, vendors and/or service providers. You must, in addition to all of your other obligations, use such Content only to the extent expressly authorized for the particular Content, and you may not use such Content in a manner that exceeds such authorization.

2.   **Prohibitions on Use of the Service:**

A.   Absent explicit prior written consent in certain situations, you may not, nor may you allow, enable, authorize, instruct, encourage, assist, suggest, inform, or promote that others, directly or indirectly, do any of the following for any reason:

pdfcrowd.com

open in browser PRO version

Are you a developer? Try out the HTML to PDF API

- access and/or use anyone else's Registration Information, or access, visit and/or use the Service by use of anyone else's account/profile and/or Registration Information;

- make any commercial, advertising, promotional, or marketing use of the Service and/or Content, including without limitation the photos, images, text, music, audio, videos, podcasts, trademarks, trade names, service marks and other brand identifiers of us, our licensors, vendors, and/or service providers obtained on or through the Service, except as permitted by the Copyright Act or other law or as expressly permitted in writing by the Agreement, us or the Service;

- impersonate, imitate or pretend to be somebody else, by setting up different accounts/profiles or otherwise, or falsely state, represent, or imply any affiliation, association, or connection with a person or entity when using the Service;

- authorize or permit anyone else to access and/or use your Registration Information, or access, visit and/or use the Service by use of your account/profile and/or Registration Information;

- falsely state, represent, or imply any affiliation, association, or connection between any person or entity, including without limitation you, your company, or your site, application, destination or service, with the Service, us, or our licensors, vendors and/or service providers;

- post, upload, transmit, send or otherwise make available on or through the Service any Content that constitutes junk mail, spam, pyramid schemes, chain letters, phishing, advertising, and/or commercial offers, including without limitation touting or recommending any stocks or particular security, portfolio of securities, transaction or investment strategy;

- repeatedly post, upload, transmit, send or otherwise make available on or through the Service the same Content multiple times in a day, week, or month;

64

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

- post, upload, transmit, send, or otherwise make available on or through the Service any unsolicited bulk communication;

- use any bots, cheats, macros, scripts, or run Maillist, Listserv or any form of auto-responder, or use any other automated process, or engage in meta-searching or periodic caching of information, to access, visit and/or use the Service, including without limitation to

- copy, harvest, crawl, index, scrape, spider, mine, gather, extract, compile, obtain, aggregate, capture, or store any Content, including without limitation photos, images, text, music, audio, videos, podcasts, data, software, source or object code, algorithms, statistics, analysis, formulas, indexes, registries, repositories, or any other information available on or through the Service, including by an automated or manual process or otherwise, if we have taken steps to forbid, prohibit, or prevent you from doing so;

- engage in personal attacks, use any language that is, or post, upload, transmit, send or otherwise make available on or through the Service any Content about an individual that is, abusive, intimidating, bullying, harassing, hateful, violent, or that victimizes, degrades, defiles or disparages an individual, on or through the Service;

- use any language that is, or post, upload, transmit, send or otherwise make available on or through the Service any Content about a group that is, hateful, violent, or that victimizes, degrades, defiles or disparages any group based on race, gender, religion, national origin, disability, sexual orientation, or age, or otherwise engage in what we deem to be racism, sexism, ageism, religious intolerance, bigotry, ethnic slurs, or homophobia;

- use any language, or post, upload, transmit, send or otherwise make available on or through the Service any Content that may or is intended to enable, authorize, instruct, encourage, assist, suggest, or promote activities that incite violence, constitute a criminal offense, give rise to civil liability, or otherwise violate any local, state, federal, provincial, national, international, or foreign law, rule or regulation (e.g., drug use, underage drinking), including

pdfcrowd.com

65

without limitation defamation, child pornography, fraud, or invasion of privacy;

- stalk others on or through the Service, or using information obtained on or through the Service, or otherwise contact other users in the physical world without their permission using information obtained on or through the Service;

- use any language that is, or post, upload, transmit, send or otherwise make available on or through the Service any Content that is, or depicts anyone engaged in any act deemed by us to be, pornographic, obscene, sexually explicit, perverse, illicit, indecent, lewd, or lascivious;

- engage in "cyber-sex" (i.e., "virtual sex") or "sexting" or solicit another to participate in "cyber-sex" or "sexting" on or through the Service;

- use any language, or post, upload, transmit, send or otherwise make available on or through the Service any Content that we deem to be offensive, immoral, vulgar, crude, harmful, confidential information, or trade secrets;

- post, upload, transmit, send or otherwise make available on or through the Service any Content that you are bound to not disclose, by agreement, contract, fiduciary duty, employment relationship, or otherwise, such as insider information, proprietary and/or confidential information, or trade secrets;

- provide professional advice or post, upload, transmit, send or otherwise make available on or through the Service any Content intended to provide professional advice about medical, health, legal, tax, financial, or investment issues, or to solicit, recommend, or endorse any securities or financial instruments, or suggest that a particular transaction or investment strategy is suitable for you or any specific person;

- discuss the mechanics of sweepstakes, contests, auctions, flash sales or similar promotions available on or through the Service, or attempt to manipulate, corrupt or otherwise affect the outcome of, any such promotions, or post, upload, transmit, send, or otherwise make available on or through the Service any Content that may or is intended to enable, authorize,

open in browser PRO version    Are you a developer? Try out the HTML to PDF API    pdfcrowd.com

open in browser   PRO version        Are you a developer? Try out the HTML to PDF API

instruct, encourage, assist, suggest, inform, or promote activities that may subvert or not comply with the rules, restrictions, and/or limitations applicable to such promotions;

■ post, upload, transmit, send, or otherwise make available on or through the Service any Content that illustrates, depicts anyone engaged in, or is intended to enable, authorize, encourage, assist, suggest, inform, promote or give instructions for weapon and/or explosive manufacture or use;

■ post, upload, transmit, send or otherwise make available on or through the Service any Content that infringes, violates, or breaches the copyright, trademark, trade secret or any other personal or proprietary right of us, our licensors, vendors, service providers, other users, and/or any third party;

■ copy, reproduce, modify, change, edit, crop, alter, revise, adapt, translate, enhance, reformat, remix, rearrange, resize, create derivative works of, move, remove, delete, or erase any copyright, trademark, or other proprietary legends, symbols, marks, or notices on the Service, or attempt to circumvent any mechanisms for preventing the unauthorized reproduction or distribution of Content;

■ copy, reproduce, modify, change, edit, crop, alter, revise, adapt, translate, enhance, reformat, remix, rearrange, resize, create derivative works of, move, remove, delete, erase, reverse engineer, decipher, decompile, disassemble, store, cache, aggregate, publish, post, display, distribute, broadcast, perform, transmit, rent, sell, share, sublicense, syndicate, or otherwise provide to others, or use any Content obtained on or through the Service, in whole or in part, except as permitted by the Copyright Act or other law or as expressly permitted in writing by the Agreement, us or the Service;

■ copy, reproduce, modify, change, edit, crop, alter, revise, adapt, translate, enhance, reformat, remix, rearrange, resize, create derivative works of, move, remove, delete, erase, reverse engineer, decipher, decompile, disassemble, or otherwise attempt to derive any source

pdfcrowd.com

open in browser  PRO version   Are you a developer? Try out the HTML to PDF API

code or underlying ideas or algorithms of the Service, in whole or in part, including without limitation any Content, communications, messaging, programming, hardware, functionality, or features on our networks, servers or databases, or otherwise reduce the Service, in whole or in part, to a human perceivable form;

- access, other than connecting to our servers by http requests using a browser, or disrupt, overwhelm, attack, hack, destroy, damage, disable, impair, repossess, alter, tamper or interfere with, the Service including without limitation any Content, communications, messaging, programming, hardware, functionality, or features on our networks, servers or databases, or impede or interfere with others' access, visitation, and/or use of the Service, in any way or by any means, whether remotely or by access to our personal property, premises, or otherwise, including, without limitation, by using administrator passwords or by masquerading as an administrator while using the Service or otherwise; or

- post, upload, transmit, send or otherwise make available on or through the Service any software disabling devices, time bombs, Trojan horses, cancelbots, viruses, worms, bugs, corrupted files, spyware, adware, malware, malicious programs or code, or devices or defects of similar nature.

B.   CAUTION: ANY ATTEMPT TO DO ANY OF THE FOREGOING PROHIBITED ACTS, OR TO OTHERWISE UNDERMINE THE OPERATION OF THE SERVICE, MAY BE A VIOLATION OF CRIMINAL AND CIVIL LAW. SHOULD SUCH AN ATTEMPT BE MADE, WE RESERVE THE RIGHT, IN ADDITION TO OUR OTHER REMEDIES, TO SEEK DAMAGES (INCLUDING WITHOUT LIMITATION ATTORNEYS' FEES) FROM ANY SUCH INDIVIDUAL OR ENTITY TO THE FULLEST EXTENT PERMITTED BY LAW, INCLUDING CRIMINAL PROSECUTION.

3.   **Comments on the Service are Not Necessarily Endorsed by Us:**

We do not necessarily endorse, support, sanction, encourage, verify, or agree with the comments, opinions, or statements posted, uploaded, transmitted, sent or otherwise made available on or through

pdfcrowd.com

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

the Service, including without limitation in our social, community and public discussion areas, photo and video galleries, bulletin boards, forums, chats, blogs, columns, articles, personal/job search and other classified ads, contests/sweepstakes, or elsewhere. Any Content posted, uploaded, transmitted, sent or otherwise made available on or through the Service, including advice and opinions, are the views and responsibility of those who post the Content and do not necessarily represent our views or the views of our licensors, vendors, and/or service providers. You agree that we and our licensors, vendors, and/or service providers are not responsible, and shall have no liability to you, with respect to any Content posted, uploaded, transmitted, sent or otherwise made available on the Service, including Content that violates the Agreement.

4. **Use of Content Supplied by You:**

A. To learn about our use of information about you and your computer, mobile or other device that may be collected in connection with your access, visitation and/or use of the Service, please see our Privacy Policy.

B. Except as expressly provided otherwise in the Agreement, you or the owner of any Content you post, upload, transmit, send or otherwise make available on or through the Service retains ownership of all rights, title, and interests in such Content. However, by posting, uploading, transmitting, sending or otherwise making available Content, registering for the Service, entering a sweepstakes or contest, or engaging in any other form of communication with us (on or through the Service or otherwise) you irrevocably grant us a royalty-free, perpetual, non-exclusive, unrestricted, worldwide right and license to copy, reproduce, modify, edit, crop, alter, revise, adapt, translate, enhance, reformat, remix, rearrange, resize, create derivative works of, move, remove, delete, erase, reverse-engineer, store, cache, aggregate, publish, post, display, distribute, broadcast, perform, transmit, rent, sell, share, sublicense, syndicate, or otherwise provide to others, use, or change all such Content and communications, in any medium (now in existence or hereinafter developed) and for any purpose, including commercial purposes, and to authorize others to do so. Among other things, this means that we may use any ideas, suggestions, developments, and/or inventions that you post, upload, transmit, send or otherwise make available in any manner as we

pdfcrowd.com

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

see fit without any compensation or attribution to you. In any event, you should make copies of or otherwise back-up any and all Content, personal data or communications you post, upload, transmit, send or otherwise make available on or through the Service that you may wish to retain.

C.  Please be aware that Content you disclose in publicly accessible portions of the Service may be available to other users, so you should be mindful of personally identifiable information and sensitive Content you may wish to post. WE ARE NOT RESPONSIBLE FOR THE CONSEQUENCES OF CONTENT OR PERSONALLY IDENTIFIABLE INFORMATION YOU POST, UPLOAD, TRANSMIT, SEND OR OTHERWISE MAKE AVAILABLE ON THE SERVICE.

5.  **Editing, Additions and Deletions:**

We reserve the right, but undertake no duty, in our sole discretion, with or without notice, to review, edit, move, add, delete, or otherwise change any features, functionality, and/or Content available on or through, or downloadable from, the Service, including without limitation any Content in your account/profile, or any of your messages, posts, or threads. This includes updates or upgrades to Content, automatic or otherwise. You agree to accept, and to take no action to interfere with, automatic upgrades or updates. Any changes to the Service may not be consistent across all platforms, computers, or devices. If you do not refresh the Service after each such change, or download the update(s) or upgrade(s), your experience may not reflect the most recent features, functionality, and/or Content, for which we and our indemnitees disclaim any and all responsibility and liability. If any changes require you to obtain new, additional, or different equipment, hardware, software, and/or telephone, mobile, wireless, Internet and/or other services, you are solely responsible for any additional expense. Even after Content is removed from your account/profile, your messages, post(s), and/or threads, regardless of whether such removal or deletion is by you or by us, copies of that Content may be retained and/or remain viewable by us, our licensors, vendors, service providers and/or other third parties, including other users.

6.  **Copyright Complaints:**

A.  We respect the intellectual property of others, and we ask our users to do the same. We may, in

pdfcrowd.com

open in browser PRO version Are you a developer? Try out the HTML to PDF API

appropriate circumstances and at our discretion, in addition to our other remedies, terminate, discontinue, suspend and/or restrict the account/profile or ability to access, visit, and/or use the Service of users who infringe the copyright rights of others, and we may choose to remove, delete, erase, or disable access to Content deemed to be infringing. It is our policy to terminate the access of repeat infringers.

B. If you have reason to believe that your Content has been copied and/or is accessible on the Service in a way that constitutes copyright infringement, or that the Service contains links or other references to another site, application, destination or service that contains Content or activity that infringes your copyright rights, you may notify us by providing a document via fax, first class U.S. mail, or e-mail that includes the following information (as required by the Online Copyright Infringement Liability Limitation Act of the Digital Millennium Copyright Act, 17 U.S.C. sec. 512) to our copyright agent set forth below:

    i. A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed;

    ii. Identification of the copyrighted work claimed to have been infringed, or if multiple copyrighted works at the Service are covered by a single notification, a representative list of such works at the Service;

    iii. Identification of the copyrighted work that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit us to locate such copyrighted work;

    iv. Information reasonably sufficient to enable us to contact the complaining party, such as an address, telephone number, and if available, an electronic mail address at which the complaining party may be contacted;

    v. A statement that the complaining party has a good faith belief that use of the copyrighted

pdfcrowd.com

work in the manner complained of is not authorized by the copyright owner, its agent, or the law; and

vi.    A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

C.    **IMPORTANT**: MISREPRESENTATIONS MADE IN A NOTICE CLAIMING THAT CONTENT OR ACTIVITY IS INFRINGING VIOLATES THE DIGITAL MILLENNIUM COPYRIGHT ACT AND MAY EXPOSE YOU TO LIABILITY FOR DAMAGES (INCLUDING COSTS AND ATTORNEYS' FEES). COURTS HAVE FOUND THAT YOU MUST CONSIDER COPYRIGHT DEFENSES, LIMITATIONS OR EXCEPTIONS BEFORE SENDING A NOTICE. ACCORDINGLY, IF YOU ARE NOT SURE WHETHER CONTENT RESIDING ON OUR SERVICE INFRINGES YOUR COPYRIGHT, WE SUGGEST THAT YOU FIRST CONTACT AN ATTORNEY. IN ADDITION, PLEASE DETERMINE WHETHER THE CONTENT YOU ARE SENDING A NOTICE ABOUT IS ACTUALLY RESIDING ON OUR SERVICE BEFORE SENDING THE NOTICE.

D.    **Copyright Agent:**

Jerry Birenz, Esq.
Sabin, Bermant & Gould LLP
4 Times Square, 23rd Floor
New York, NY 10036-6526

Phone: (212) 381-7057
Fax: (212) 381-7201
E-mail: copyright@sabinfirm.com

**Note: Only copyright complaints should be sent to agent. No other communications will be accepted or responded to.**

For communications on other matters, please contact us through the means described on the Service, if available (for example, in the "Contact Us" section), or if no such means are specified, contact our Privacy Policy Coordinator as described in our Privacy Policy.

72

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

PLEASE NOTE: THE INFORMATION WE PRESENT HERE IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT LEGAL ADVICE.

7. **Merchandise, Products and/or Services Available on or through the Service:**

A. WE MAY RECEIVE A COMMISSION, FEE, AND/OR OTHER COMPENSATION ON SOME PURCHASES MADE ON, THROUGH, OR LINKED FROM THE SERVICE.

B. Nothing on the Service constitutes a binding offer to sell, rent, auction, distribute or give away merchandise, products and/or services, including without limitation Content. We reserve the right at any time after receipt of your order or bid to accept or decline such order or bid, or any portion thereof, or to not ship to particular addresses, even after your receipt of an order or bid confirmation or after you have been charged. Any prices displayed on the Service are quoted in U.S. dollars and are intended to be valid and effective only in the United States. In the event merchandise, products and/or services, including without limitation Content, are listed at an incorrect price, we have the right to refuse or cancel orders or bids placed at the incorrect price, regardless of whether the order or bid has been confirmed or you have been charged. If your order or bid is canceled by us after you have been charged, we will issue a credit. We reserve the right at any time to limit the quantities of merchandise, products and/or services, including without limitation Content, which you, your family or any group seek.

C. Images available on or through the Service of merchandise or products, including without limitation Content, may not accurately capture the actual appearance, color, look and feel, specifications, features, or functionality of such merchandise or products.

D. NEITHER WE NOR OUR INDEMNITEES (AS DEFINED BELOW) MAKE ANY REPRESENTATIONS, WARRANTIES, OR GUARANTEES WITH RESPECT TO ANY OF THE MERCHANDISE, PRODUCTS, AND/OR SERVICES, INCLUDING WITHOUT LIMITATION CONTENT, FEATURED, MENTIONED, DESCRIBED, AUCTIONED, DISTRIBUTED, GIVEN AWAY, RENTED, SOLD, OR OTHERWISE AVAILABLE ON OR THROUGH THE SERVICE. ALL

pdfcrowd.com

open in browser PRO version    Are you a developer? Try out the HTML to PDF API

TRANSACTIONS FOR MERCHANDISE, PRODUCTS, AND/OR SERVICES, INCLUDING WITHOUT LIMITATION CONTENT, SHALL BE BETWEEN THE USER AND THE THIRD PARTY SELLER, DISTRIBUTOR, OR MANUFACTURER WITHOUT ANY INVOLVEMENT BY US OR OUR INDEMNITEES. THESE THIRD PARTIES MAY REQUIRE THAT YOU AGREE TO THEIR ADDITIONAL TERMS, CONDITIONS, CONTRACTS, AGREEMENTS, AND/OR RULES.

E.  IF YOU BID ON, PURCHASE, ORDER, OBTAIN OR RESEARCH MERCHANDISE, PRODUCTS AND/OR SERVICES, INCLUDING WITHOUT LIMITATION CONTENT, ON OR THROUGH THE SERVICE, NOTE THAT NEITHER WE NOR OUR INDEMNITEES HAVE ANY CONTROL OVER, OR ASSUME RESPONSIBILITY FOR, THE QUALITY, QUANTITY, SIZE, CHARACTER, FITNESS FOR A PARTICULAR PURPOSE, SPECIFICATIONS, FEATURES, FUNCTIONALITY, SAFETY, OR LEGALITY OF SUCH MERCHANDISE, PRODUCTS AND/OR SERVICES, THE TRUTH OR ACCURACY OF THE LISTINGS, OR THE ABILITY OF THE SELLERS TO SELL, SHIP, OR OTHERWISE PROVIDE SUCH MERCHANDISE, PRODUCTS AND/OR SERVICES.

F.  YOU AGREE THAT WE AND OUR INDEMNITEES ARE NOT RESPONSIBLE, AND SHALL HAVE NO LIABILITY TO YOU, WITH RESPECT TO MERCHANDISE, PRODUCTS, AND/OR SERVICES, INCLUDING WITHOUT LIMITATION CONTENT, FEATURED, MENTIONED, DESCRIBED, AUCTIONED, DISTRIBUTED, GIVEN AWAY, SOLD, RENTED OR OTHERWISE AVAILABLE ON OR THROUGH THE SERVICE, INCLUDING ILLEGAL, OFFENSIVE OR ILLICIT ITEMS, EVEN ITEMS THAT VIOLATE THE AGREEMENT.

8.  **Indemnification:**

You agree to indemnify, defend and hold harmless us, our licensors, vendors, service providers, and each of our and their respective officers, directors, members, employees, independent and sub-contractors, agents, representatives, successors and assigns (collectively, "Indemnitees") from and against any and all claims, disputes, demands, proceedings, cause of action, judgments, damages, liabilities, losses, costs or expense (including, but not limited to reasonable attorneys' fees) of any kind and nature, known and unknown, suspected and unsuspected, disclosed and undisclosed (collectively,

74

"Claims") which may arise out of or are in any way connected with your access, visitation and/or use of the Service, your Content, unauthorized use of Content obtained on or through the Service, breach or alleged breach of the Agreement, or from any of your acts or omissions in connection with the Service.

9.   **Disclaimer of Warranty and Limitation of Liability:**

A.   CERTAIN FEATURES, FUNCTIONALITY, AND/OR CONTENT OFFERED ON OR THROUGH THE SERVICE MAY BE HOSTED, ADMINISTERED, RUN OR OTHERWISE PARTICIPATED IN BY THIRD PARTIES, SUCH AS OUR SERVICE PROVIDERS THAT PROVIDE SOCIAL, COMMUNITY AND PUBLIC DISCUSSION AREAS, PHOTO AND VIDEO GALLERIES, BULLETIN BOARDS, FORUMS, CHATS, BLOGS, AUCTIONS, SHOPPING, AND PERSONAL/JOB SEARCH AND OTHER CLASSIFIED ADS. THESE SERVICE PROVIDERS MAY REQUIRE THAT YOU AGREE TO THEIR ADDITIONAL TERMS, CONDITIONS, CONTRACTS, AGREEMENTS AND/OR RULES. YOUR COMPLIANCE WITH ANY SUCH ADDITIONAL TERMS, CONDITIONS, CONTRACTS, AGREEMENTS AND/OR RULES IS SOLELY YOUR RESPONSIBILITY AND WILL HAVE NO EFFECT ON YOUR CONTINUING OBLIGATION TO COMPLY WITH THE AGREEMENT WHEN USING THE SERVICE. WE AND OUR INDEMNITEES SPECIFICALLY DISCLAIM ANY AND ALL LIABILITY IN CONNECTION WITH THE ACTS OR OMISSIONS OF SUCH THIRD PARTIES.

B.   YOU ACKNOWLEDGE THAT YOU ARE USING THE SERVICE AT YOUR OWN RISK. THE SERVICE IS PROVIDED "AS IS", "WITH ALL FAULTS" AND ON AN "AS AVAILABLE" BASIS, AND WE AND OUR INDEMNITEES HEREBY EXPRESSLY DISCLAIM ANY AND ALL REPRESENTATIONS, WARRANTIES, AND GUARANTEES, EXPRESS AND IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OF ACCURACY, RELIABILITY, TITLE, MERCHANTABILITY, NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY, CONDITION, GUARANTEE OR REPRESENTATION, WHETHER ORAL, IN WRITING OR IN ELECTRONIC FORM, INCLUDING BUT NOT LIMITED TO THE ACCURACY OR COMPLETENESS OF ANY CONTENT CONTAINED THEREIN OR PROVIDED BY US OR THE SERVICE. WE AND OUR INDEMNITEES DO NOT REPRESENT, WARRANT

75

OR GUARANTEE THAT ACCESS TO THE SERVICE AND/OR COMMUNICATIONS OR MESSAGING FROM OR TO US OR YOU WILL BE UNINTERRUPTED, TIMELY, OR ERROR FREE, OR THAT THERE WILL BE NO FAILURES, DELAYS, INACCURACIES, ERRORS OR OMISSIONS OR LOSS OF TRANSMITTED CONTENT, OR THAT NO SOFTWARE DISABLING DEVICES, TIME BOMBS, VIRUSES, WORMS, BUGS, OR DEVICES OR DEFECTS OF SIMILAR NATURE WILL BE TRANSMITTED ON OR THROUGH THE SERVICE, AND WE AND OUR INDEMNITEES WILL NOT BE LIABLE IN THE EVENT OF ANY SUCH OCCURRENCE.

C.   WE AND OUR INDEMNITEES ARE NOT RESPONSIBLE FOR INCOMPLETE, INCORRECT, LOST, DELAYED, LATE, MISDIRECTED, GARBLED, DAMAGED, ILLEGIBLE, UNDELIVERABLE, OR INCOMPLETELY RECEIVED COMMUNICATIONS OR MESSAGING FROM OR TO US OR YOU FOR ANY REASON, INCLUDING BY REASON OF HARDWARE, SOFTWARE, BROWSER, NETWORK, COMMUNICATIONS SYSTEM FAILURE, MALFUNCTION, DELAY, OR CONGESTION, OR ANY INCOMPATIBILITY AT OUR SERVERS OR ELSEWHERE, OR FOR ANY OTHER TECHNICAL PROBLEMS, ANY FORM OF ACTIVE OR PASSIVE FILTERING BY A USER'S COMPUTER, MOBILE OR OTHER DEVICE OR ACCESS PROVIDER, INSUFFICIENT SPACE ON USER'S COMPUTER, MOBILE OR OTHER DEVICE OR ACCOUNT/PROFILE, OR ANY OTHER CAUSE OR COMBINATION THEREOF.

D.   WE AND OUR INDEMNITEES SHALL NOT BE LIABLE TO YOU OR ANY THIRD PARTIES FOR ANY DIRECT, INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ALLEGEDLY SUSTAINED ARISING OUT OF THE AGREEMENT, THE SERVICE, THE SALE, PURCHASE, RECEIPT, USE OR MISUSE OF ANY MERCHANDISE, PRODUCTS AND/OR SERVICES, INCLUDING WITHOUT LIMITATION CONTENT, YOUR ABILITY OR INABILITY TO ACCESS, VISIT AND/OR USE THE SERVICE, INCLUDING DAMAGE TO YOUR COMPUTER, MOBILE OR OTHER DEVICE, OR FOR SOFTWARE DISABLING DEVICES, TIME BOMBS, VIRUSES, WORMS, BUGS, OR DEVICES OR DEFECTS OF SIMILAR NATURE ALLEGED TO HAVE BEEN OBTAINED FROM THE SERVICE, YOUR ACCESS, VISITATION, AND/OR USE OF, OR RELIANCE ON, THE SERVICE OR ANY OF THE MERCHANDISE, PRODUCTS, SERVICES AND/OR CONTENT AVAILABLE ON OR THROUGH THE SERVICE, REGARDLESS OF THE

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

76

TYPE OF CLAIM OR THE NATURE OF THE CAUSE OF ACTION, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL OUR LIABILITY TO YOU EXCEED THE TOTAL AMOUNT OF FEES PAID BY YOU DURING THE ONE MONTH PERIOD IN WHICH THE CLAIM AROSE. SOME STATES DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. THE AGREEMENT IS NOT SUBJECT TO THE LAWS OF SUCH STATES, BUT TO THE EXTENT A CLAIM IS BROUGHT THEREIN, OUR LIABILITY AND WARRANTIES ARE LIMITED TO THE EXTENT PERMITTED BY LAW. IF YOU ARE A CALIFORNIA RESIDENT, YOU WAIVE CALIFORNIA CIVIL CODE SECTION 1542, WHICH STATES, IN PART: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR".

10.  **Termination or Suspension of the Service, Your Use of the Service, and/or the Agreement:**

A.  We reserve the right, in addition to our other remedies, to terminate, discontinue, suspend and/or restrict the Service, your account/profile, your ability to access, visit and/or use the Service or any portion thereof, and/or the Agreement, including without limitation any of our purported obligations hereunder, for any or no reason, with or without notice. In the event of any termination or discontinuation of your account/profile, your ability to access, visit and/or use the Service or any portion thereof, and/or the Agreement, we reserve the right, in addition to our other remedies, to reassign, and/or allow another user to use, your password and/or User ID.

B.  Even if the Service, your ability to access, visit and/or use the Service or any portion thereof, and/or the Agreement is terminated, discontinued, suspended or restricted, by you or by us, we have no obligation to (but we may in our discretion) remove any Content, and therefore copies of all information with regard to your account/profile and/or Content you may have posted, uploaded, transmitted, sent or otherwise made available on or through the Service, may be retained and/or remain viewable by us, our licensors, vendors, service providers and/or other third parties,

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

open in browser. PRO version   Are you a developer? Try out the HTML to PDF API

including other users. Nevertheless, we have no obligation to retain, store, or provide you with any information with regard to your account/profile and/or Content you may have posted, uploaded, transmitted, sent or otherwise made available on or through the Service. All provisions of the Agreement shall survive the termination or expiration of the Agreement and/or your account/profile.

11. **Communications to You:**

A. The communications between you and us usually use electronic means, whether you access, visit or use the Service, send us messages, or whether we post notices on the Service or communicate with you via messaging. For contractual purposes, you (a) consent to receive communications from us in electronic form; and (b) agree that all notices, documents, disclosures, and other communications that we provide to you electronically satisfy any legal requirement that such communications would satisfy if they were in writing. Your consent to receive communications and do business electronically, and your agreement to do so applies to all of your interactions and transactions with us.

B. You understand and agree that joining the Service may include receiving certain communications from us, such as transactional or relationship messages, and/or messages about your account/profile, and that these communications are considered part of your account/profile and you may not be able to opt out of receiving them without ceasing to be a registered user of the Service.

12. **Associated Press:**

By accessing this Service, you specifically acknowledge and agree that: (i) Associated Press Content shall not be published, broadcast, rewritten for broadcast or publication or redistributed directly or indirectly in any medium; (ii) no Associated Press Content nor any portion thereof may be stored in a computer, mobile or other device except for personal and non-commercial use; (iii) the Associated Press will not be held liable for any delays, inaccuracies, errors or omissions therefrom or in the transmission or delivery of all or any part thereof or for any damages arising from any of the foregoing; (iv) the Associated Press is an intended third party beneficiary of these terms and conditions and it may

pdfcrowd.com

open in browser   PRO version   Are you a developer? Try out the HTML to PDF API

13.   **Mobile Participants:**

You understand and agree that various entities unaffiliated with us make up the "mobile ecosystem" that enables you to access, visit and/or use the Service via your computer, mobile or other device, including without limitation equipment, hardware and software manufacturers and providers, telephone, mobile, wireless, and Internet network providers and carriers, and sellers or providers of Content for use with the Service (collectively, the "Mobile Participants"). We do not represent, warrant or guarantee that all portions of the Service, or the Service as a whole, can be accessed via all mobile or other devices, or via all carriers and service plans or is available in all geographic locations. THESE MOBILE PARTICIPANTS MAY REQUIRE THAT YOU AGREE TO THEIR ADDITIONAL TERMS, CONDITIONS, CONTRACTS, AGREEMENTS AND/OR RULES. YOUR COMPLIANCE WITH ANY SUCH ADDITIONAL TERMS, CONDITIONS, CONTRACTS, AGREEMENTS AND/OR RULES IS SOLELY YOUR RESPONSIBILITY AND WILL HAVE NO EFFECT ON YOUR CONTINUING OBLIGATION TO COMPLY WITH THE AGREEMENT WHEN USING THE SERVICE. WE AND OUR INDEMNITEES SPECIFICALLY DISCLAIM ANY AND ALL LIABILITY IN CONNECTION WITH THE ACTS OR OMISSIONS OF SUCH MOBILE PARTICIPANTS. We have agreements with some of these Mobile Participants that require us to make certain disclosures and pass along certain responsibilities to you. For such Mobile Participants, you specifically acknowledge and agree that: (i) the Agreement is between us and you; the Mobile Participants are not parties to the Agreement; (ii) the Mobile Participants and their parent, subsidiaries and affiliates are third party beneficiaries of the Agreement and upon your acceptance of the terms and conditions of the Agreement, the Mobile Participants will have the right (and will be deemed to have accepted the right) to enforce the Agreement against you; (iii) the license granted to you hereunder is limited to a non-transferable license to use the Service on the particular product authorized by the applicable Mobile Participant that you own or control and as permitted by such Mobile Participant's applicable usage rules; (iv) Mobile Participants have no obligation whatsoever in connection with the functionality or content of the Service, or to furnish any maintenance or support services with respect to the Service; (v) in the event of any failure of the Service to conform to any

exercise all rights and remedies available to it; and (v) the Associated Press reserves the right to audit possible unauthorized commercial use of Associated Press Content or any portion thereof at any time.

pdfcrowd.com

79

applicable warranty, you may be able to notify the applicable Mobile Participant to receive a refund of all or part of the amount you paid for the Service, if any (to the maximum amount permitted by applicable law). Mobile Participants will have no other warranty obligation whatsoever with respect to the Service; (vi) Mobile Participants are not responsible for addressing any claims, losses, liabilities, damages, costs or expenses by you or a third party relating to the Service or your possession, access, visitation and/or use of the Service, including without limitation (a) product liability claims; (b) any claim that the Service fails to conform to any applicable legal or regulatory requirement; and (c) claims arising under consumer protection or similar legislation; and (vii) in the event of any third party claim that the Service or your possession, access, visitation and/or use of the Service, infringes such third party's intellectual property rights, Mobile Participants are not responsible for the investigation, defense, settlement and/or discharge of such claim.

14. **Disputes and Jurisdiction:**

A. The Service is based in the United States. It is not designed, customized or intended for, or directed to, any other country. Those who choose to access, visit and/or use the Service do so on their own initiative and are responsible for compliance with local laws, if and to the extent local laws are applicable. We make no representation, warranty or guarantee that the Service, or any merchandise, products, services, and/or Content available on or through the Service are appropriate, available, or legal in any particular geographic location.

B. In any dispute between us, your sole remedy is to stop using your account/profile and/or the Service, including without limitation cancelling any Fee-based services. This includes any dispute related to or arising out of: (i) rules, restrictions, limitations, terms and conditions that apply to the Service, whether listed in this User Agreement and Privacy Policy, posted at various points in the Service, or otherwise communicated to you, including our enforcement, non-enforcement, or application of any such rules; (ii) any of our policies and/or practices, including our enforcement, non-enforcement, or application of any such policies and/or practices; (iii) any Content available on or through the Service, or any edits, deletions, additions, or other changes thereto; (iv) your ability or inability to access, visit and/or use portions of the Service, or the Service as a whole, or

80

features, functionality, and/or Content available on or through the Service; or (v) the amount, type, and/or basis for determining any Fees, any changes thereto, or additional Fees.

C.  You agree that in the event of any dispute between us, you will first contact us and make a good faith sustained effort to resolve the dispute before resorting to more formal means of resolution, including without limitation any court action. In the event of any court action, all disputes will be resolved individually, without resort to any class action, and you specifically waive your right to a trial by jury. Furthermore, you agree that any cause of action must commence within one (1) year after the underlying issue first arose; otherwise, you waive any right to bring such cause of action and such cause of action is permanently barred.

D.  You agree that, regardless of where you access, visit and/or use the Service, all issues concerning the construction, validity, interpretation and enforceability of the Agreement shall be governed and construed in accordance with the laws of the United States and New York State, without regard to any principles of conflict of laws. Any disputes that result in court action will be resolved exclusively by a state or federal court located in Manhattan, New York, and you specifically consent to the personal jurisdiction of such courts and waive any claim of forum non-conveniens. Should there be a conflict between the laws of New York and any other laws, the conflict will be resolved in favor of the laws of New York. To the extent permitted by applicable law, all judgments or awards shall be limited to actual out-of-pocket damages (excluding attorneys' fees) and shall not include any indirect, punitive, incidental and/or consequential damages.

E.  If for any reason a court of competent jurisdiction finds any provision of the Agreement, or portion thereof, to be invalid or unenforceable, that provision or portion will be enforced to the maximum extent permissible so as to effect the intent of the parties, and the remainder of the Agreement will continue to be valid and enforceable in full force and effect.

15.  **General:**

A.  We reserve the right to post, from time to time, additional rules that apply to certain portions of the

81

Service, or the Service as a whole. Such additional rules will be posted in the relevant portions of the Service, and are hereby incorporated into the Agreement by this reference. Your continued access, visitation and/or use of the Service constitutes your agreement to comply with these additional rules.

B. The rules, restrictions, limitations, terms and conditions that apply to the Service, whether listed in this User Agreement and Privacy Policy, posted at various points in the Service, or otherwise communicated to you, constitutes the Agreement and entire understanding between the parties, and supersedes prior agreements between the parties, whether oral or written, with respect to the subject matter hereof. Unless explicitly stated in writing by us, any new or additional features, functionality, or Content that augment or enhance the Service, including the release of updates, upgrades, new products and/or services, shall be subject to the terms and conditions of the Agreement.

C. Any delay or failure by us to exercise or enforce any right or provision of the Agreement will not constitute a waiver of such right or provision. No waiver by us shall have effect unless such waiver is set forth in writing, signed by us; nor shall any such waiver of any breach or default constitute a waiver of any subsequent breach or default.

D. We may sub-license, transfer, sell or assign the Agreement, and/or any of our purported obligations hereunder, at any time to any person or entity, with or without notice. You may not sub-license, transfer, sell, or assign the Agreement at any time to any person or entity, and any attempt to do so will be null and void.

## VI. PRIVACY POLICY

### 1. The Type of Information the Service Collects:

A. The following Privacy Policy summarizes the various ways we treat personally identifiable and other information about you and your computer, mobile or other device when you access, visit

82

open in browser  PRO version   Are you a developer? Try out the HTML to PDF API

and/or use the Service. This Privacy Policy does not cover information collected elsewhere, including without limitation offline and on sites, applications, destinations, or services linked to from the Service.

B.  The Service generally collects personally identifiable information with your specific knowledge and consent. For instance, when you enter a sweepstakes or contest, complete a survey, make a purchase, subscribe to our publication(s), register for certain services, or register and/or set up an account/profile to access, visit and/or use certain portions of the Service, or the Service as a whole, you may be provided, or required to choose, a password and/or User ID, and you may provide a credit, debit, or charge card number, or other payment information, as well as your name, telephone number(s), email and/or street address, and other personally identifiable information. Other information such as your age, gender, an avatar, and the number for your mobile or other device may also be requested. In addition, you may be asked to send us similar information via messaging (e.g., email, SMS, MMS, or other technologies). All such information shall be referred to in this Privacy Policy as your "Registration Information".

C.  Our servers may also automatically collect information about you, your online behavior and your computer, mobile or other device. The information collected may include, without limitation, the make, model, settings, specifications (e.g., CPU speed, connection speed, browser type, operating system, device identifier) and geographic location of you and/or your computer, mobile or other device, as well as date/time stamp, IP address, pages visited, time of visits, content viewed, ads viewed, the site(s), application(s), destination(s), and/or service(s) you arrived from, and other clickstream data.

D.  If you choose to access, visit and/or use any third party social networking service(s) that may be integrated with the Service, we may receive personally identifiable information and other information about you and your computer, mobile or other device that you have made available to those services, including information about your contacts on those services. For example, some social networking services allow you to push content from our Service to your contacts or to pull information about your contacts so you can connect with them on or through our Service. Some

pdfcrowd.com

83

open in browser PRO version    Are you a developer? Try out the HTML to PDF API

2.  **How the Service Uses Information About You:**

A.  We use personally identifiable information you supply through the Service to provide you with the merchandise, product, service, and/or Content you have requested. For example, if you subscribe to any of our publications, we may use your e-mail address to send you a confirmation notice and your mailing address to send you the publication. Similarly, if you enter an online sweepstakes, we will use this information to notify you if you are a winner. We may also use the information to communicate with you about new features, products or services, and/or to improve the services that we offer by tailoring them to your needs.

B.  Unless otherwise specified on the Service, we may sell or share information about you and your computer, mobile or other device, including without limitation your Registration Information and other personally identifiable information, with our parent, subsidiaries, and affiliates and with carefully selected companies who we think may offer services and/or products that may be of interest to you. If you do not wish to have your personally identifiable information shared with unaffiliated third parties, contact our Privacy Policy Coordinator as described at the end of this document. If you do not wish to receive future commercial messages from us, simply follow the unsubscribe instructions contained within the message you receive. (But note that you may continue to receive certain communications from us, such as transactional or relationship messages, and/or messages about your account/profile). If you've registered on any part of the

social networking services also will facilitate your registration for our Service or enhance or personalize your experience on our Service. Your decision to use a social networking service in connection with our Service is voluntary. However, you should make sure you are comfortable with the information your third party social networking services may make available to our Service by visiting those services' privacy policies and/or modifying your privacy settings directly with those services. We reserve the right to use, transfer, assign, sell, share, and provide access to all personally identifiable information and other information about you and your computer, mobile or other device that we receive through third-party social networking services in the same ways described in this Agreement as all of your other information.

84

pdfcrowd.com

Service, please use the mechanism or contact information on the Service that allows you to change or update your member preferences or information, if available, to keep all such data accurate and up-to-date. If no such mechanism or contact information is available on the Service, contact our Privacy Policy Coordinator as described below with your changes.

C.  We may also allow access to our database by third parties that provide us with services, such as technical maintenance, market research, community and forums management, auction services, and shopping, personal/job search and other classified ads functionality, but only for the purpose of and to the extent necessary to provide those services. And if you choose to purchase merchandise, products and/or services, including without limitation Content, on or through features on the Service, we may forward your information to third parties for services such as credit card or other payment processing, order fulfillment, credit pre-authorization, and address verification. There are also times when you provide information about yourself to us in areas of the Service that may be managed or participated in by third parties. In such cases, the information may be used by us and by such third party(ies), each pursuant to its own policies. We may also provide your information to our advertisers, so that they can serve ads to you that meet your needs or match your interests. While we may seek to require such third parties to follow appropriate privacy policies and will not authorize them to use this information except for the express purpose for which it is provided, we do not bear any responsibility for any actions or policies of third parties.

D.  We may also provide access to our database in order to cooperate with official investigations or legal proceedings initiated by governmental and/or law enforcement officials, as well as private parties, including, for example, in response to subpoenas, search warrants, court orders, or other legal process.

E.  In addition, we reserve the right to use the information we collect about your computer, mobile or other device (including its geographic location), which may at times be able to identify you, for any lawful business purpose, including without limitation to help diagnose problems with our servers, to gather broad demographic information, analyze trends, track users' movements around the Service, and to otherwise administer the Service. Geographic location information about you

85

and/or your computer, mobile or other device may specifically be used to show you content and sponsored messaging based on geographic location.

F.  We reserve the right to use, transfer, sell, and share aggregated, anonymous data about our users as a group for any lawful business purpose, such as analyzing usage trends and seeking compatible advertisers, sponsors, clients and customers.

G.  In addition, as our business changes, we may buy or sell various assets. In the event all or a portion of the assets owned or controlled by us, our parent or any subsidiary or affiliated entity are sold, assigned, transferred or acquired by another company, the information from and/or about our Service users may be among the transferred assets.

H.  We reserve the right to identify you from your Registration Information and/or to merge or co-mingle anonymous or non-personally identifiable data about you, your offline and online behavior, and/or your computer, mobile or other device (including its geographic location), with your Registration Information and/or other personally identifiable data for any lawful business purpose.

3.  **Local Device Storage and other Tracking Technologies:**

A.  The Service may place and/or store code or other types of information and/or devices (e.g., "cookies") on your computer, mobile or other device ("Local Device Storage"). We may use Local Device Storage for any lawful business purpose, including without limitation to determine which of our messages have been opened by recipients so we can gauge the effectiveness of marketing campaigns, to control the display of ads, to track usage patterns, the movements of individual users, and your geographic location, to help diagnose problems with our servers, to gather broad demographic information, to analyze trends, to conduct research, to deliver editorial content, to record registration and personalization information, and to otherwise administer the Service. For example, if you register on any part of the Service and are given the option to save your user name and password, we may provide this convenience to you via Local Device Storage. Local Device Storage may also collect and store your personally identifiable information, which may be shared

86

open in browser PRO version   Are you a developer? Try out the HTML to PDF API                              pdfcrowd.com

open in browser PRO version    Are you a developer? Try out the HTML to PDF API

with our parent, subsidiaries, and affiliates and other companies.

B. If you do not want Local Device Storage, your computer, mobile or other device may include an option that allows you to not accept it. However, if you disable Local Device Storage, some portions of the Service may not function properly.

C. In addition to Local Device Storage, we may use web beacons, web bugs, clear gifs, and similar technologies (collectively, together with Local Device Storage, the "Tracking Technologies"). We use Tracking Technologies for all or some of the same lawful business purposes we describe above for use of Local Device Storage.

4. **How to Opt-Out of Third Party Tracking Technologies:**

Our advertising service vendors and other third parties may also use Tracking Technologies to serve you advertisements tailored to interests you have shown by browsing on this Service and other sites, applications, destinations, and services you have visited, and to determine whether you have seen a particular advertisement before to avoid sending you duplicate advertisements, and for other lawful business purposes. In doing so, these third parties may collect non-personally identifiable data including for example the make, model, settings, specifications (e.g., CPU speed, connection speed, browser type, operating system, device identifier) and geographic location of your computer, mobile or other device, as well as date/time stamp, IP address, pages visited, time of visits, content viewed, ads viewed, the site(s), application(s), destination(s), and/or service(s) you arrived from, and other clickstream data. The use of Tracking Technologies by third parties is subject to their own privacy policies, not this Privacy Policy, and we have no responsibility or liability in connection therewith. If you do not want the services that Tracking Technologies provide, you may be able to opt-out by visiting http://www.aboutads.info.

5. **Transfer of Information:**

Your information may be transferred to, and maintained on, servers and databases located outside of your state, province, country or other governmental jurisdiction where the privacy laws may not be as

pdfcrowd.com

open in browser PRO version Are you a developer? Try out the HTML to PDF API

protective as your jurisdiction. Please be advised that we may transfer your information to and from any state, province, county or other governmental jurisdiction, and process it in the United States or elsewhere. Your consent to this Privacy Policy followed by your submission of such information represents your agreement to any such transfer.

6. **Information Security and Notification:**

A. Because no data transmission is completely secure, and no system of physical or electronic security is impenetrable, we cannot guarantee the security of the information you send to us or the security of our servers, networks or databases, and by using the Service you agree to assume all risk in connection with the information sent to us or collected by us when you access, visit and/or use the Service, including without limitation your personally identifiable information or other Registration Information, and we are not responsible for any loss of such information or the consequences thereof.

B. Moreover, if you elect to store information, such as your personally identifiable information or other Registration Information, where others may access it, we are not responsible for any loss of such information or the consequences thereof. If you lose a computer, mobile or other device, or it is stolen, that contains your personally identifiable information or other Registration Information, it is up to you to take all the steps necessary to protect yourself.

C. In the unlikely event that we believe that the security of your information in our possession or control may have been compromised, we may seek to notify you. If notification is appropriate, we may notify you via your computer, mobile or other device.

7. **Kids and Parents:**

A. This Service is not intended for use by children, especially those under age 13. No one under age 13 is allowed to register for the Service or provide any personally identifiable information or use our social, community and public discussion areas, photo and video galleries, bulletin boards,

pdfcrowd.com

forums, chats, blogs, personal/job search and other classified ads, and elsewhere. Minors between the ages of 13 and 17, inclusive, must get the permission of their parent(s) or legal guardian(s) before making purchases, including subscriptions, on this Service.

B.  If your children disclose information about themselves in publicly accessible areas of the Service, they may get unsolicited messages from other parties. Accordingly, you should tell them not to do so.

C.  If you're worried about your children's activities or their privacy on the Service, we encourage you to contact our Privacy Policy Coordinator as described below.

8.  **Privacy Policy Coordinator:**

If you have any concerns or questions about any aspect of this policy, please feel free to contact our Privacy Policy Coordinator as follows:

Privacy Policy Coordinator
Conde Nast
1313 Market Street
Wilmington, DE 19801
Privacy_administration@condenast.com

Click here to be removed from Condé Nast mailing lists

* * * * * * * * * * * * * *

**If you don't agree to the terms contained in this User Agreement and Privacy Policy, you must immediately exit the Service.**

open in browser   PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

EXHIBIT C



1  SEAN REIS (sreis@edelson.com) - SBN 184044
2  EDELSON MCGUIRE, LLP
   30021 Tomas Street, Suite 300
3  Rancho Santa Margarita, California 92688
   Tel: (949) 459-2124
4  Fax: (949) 459-2123

5  *Counsel for Plaintiff and the Putative Class*

6

7

8

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

DEC 23 2011

John A. Clarke, Executive Officer/Clerk
By: Tanaya Lewis, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

LOS ANGELES COUNTY

9  BRIAN KING, individually and on
   behalf of all others similarly situated,          )   Case No. BC475752
                                                      )
10                                                    )
                      Plaintiff,                      )   Assigned for all purposes to:
11                                                    )   Honorable Emilie H. Elias
   v.                                                 )   Dept. 324
12                                                    )
   CONDÉ NAST PUBLICATIONS, a                         )   **PLAINTIFF BRIAN KING'S MOTION AND**
13 Delaware corporation,                              )   **MEMORANDUM OF LAW IN SUPPORT OF**
                                                      )   **CLASS CERTIFICATION**
14                                                    )
                      Defendant.                      )
15                                                    )   Date:  March 7, 2012
                                                      )   Time:  9:00 a.m.
16                                                    )   Dept.  324

17

18

19

20

21

22

23

24

25

26

27

28  Plaintiff's Motion and Memorandum
    of Law in Support of Class Certification

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2  **PLEASE TAKE NOTICE** that on March 7, 2012, at 9:00 a.m., or as soon thereafter as

3  this matter may be heard in Courtroom 324 of the above entitled court, Plaintiff Brian King will

4  appear, through counsel, before the Honorable Emilie H. Elias, and then and there move the

5  Court, pursuant to Cal. Civ. Code § 382, for an Order certifying a class of individuals defined as

6  follows:

7      All California residents who have provided personal information to Condé Nast.[1]

8      The proposed class meets each of Section 382's prerequisites for certification. The class

9  is easily ascertainable and its members are so numerous that joinder would be impractical. There

10  are questions of law and fact common to each of the class members' claims, and those questions

11  predominate over any individual issues. Moreover, Plaintiff's claims are typical of those of the

12  classes and he and his counsel have and will continue to fairly and adequately represent the

13  interests of the absent class members. Accordingly, for these reasons and as discussed more fully

14  in Plaintiff's contemporaneously filed Memorandum in Support of Motion for Class

15  Certification, certification of the proposed class is appropriate.

16      WHEREFORE, Plaintiff Brian King, individually and on behalf of all others similarly

17  situated, respectfully requests that the Court grant the instant motion and enter an Order (i)

18  certifying the proposed class as defined herein; (ii) appointing Plaintiff class representative and

19  his counsel Class Counsel; (iii) requiring that notice of the certification be disseminated to all

20  putative class members; (iv) providing leave to conduct any necessary and appropriate discovery

21  relating to any class certification issues, and (v) providing such other and further relief as the

22  Court deems equitable and just.

23

24

25

26  [1]    Plaintiff anticipates the potential need to revise the class definition following the
conclusion of discovery relating to class certification issues.

27

28  Plaintiff's Motion and Memorandum      ii
of Law in Support of Class Certification

Dated: December 23, 2011

BRIAN KING, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED,

By: /s/ Sean Reis
One of Plaintiff's Attorneys

SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON McGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

*Attorneys for Plaintiff and the putative class*

Plaintiff's Motion and Memorandum
of Law in Support of Class Certification

iii

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND .......................................................................... 2

      A.    Facts Applicable to All putative Class Members ............................... 2

      B.    Facts Applicable to Plaintiff Brian King ............................................ 2

III.  THE PROPOSED CLASS IS BOTH ASCERTAINABLE AND HAS A
      WELL-DEFINED COMMUNITY OF INTEREST AMONG THE CLASS
      MEMBERS ..................................................................................................... 3

      A.    The Proposed Class is Readily Ascertainable and So Numerous That
            Individual Joinder Would Be Impracticable ....................................... 4

            i.    The Class Is Ascertainable ........................................................ 4

            ii.   The Class Is So Numerous that Joinder of Each Individual Member
                  Would be Impracticable ............................................................ 5

      B.    There Is A Sufficient Community of Interest to Justify Class
            Treatment of the Claims at Issue in This Case ................................... 6

            i.    Common Questions of Law and Fact Predominate ................... 6

            ii.   Plaintiff's Claims Are Typical of the Claims of the Other Members
                  of the Class ................................................................................ 8

            iii.  Plaintiff and His Counsel Have and Will Continue to Adequately
                  Represent the Interests of the Proposed Class ......................... 9

      C.    Class Treatment is the Superior Method for Adjudication of the
            Claims at Issue in this Case .............................................................. 10

IV.   CONCLUSION ............................................................................................ 11

1

2                           **TABLE OF AUTHORITIES**

3    *California Cases Cited*

4    *Aguiar v. Cintas Corp. No. 2*, 50 Cal. Rptr. 3d 135 (Ct. App. 2006) ..............................4

5    *Ali v. U.S.A. Cab Ltd.*, 98 Cal. Rptr. 3d 568 (Ct. App. 2009)................................7, 10

6    *Basurco v. 21st Century Ins. Co.*, 133 Cal. Rptr. 2d 367 (Ct. App. 2003) .....................6

7    *Brown v. Regents of University of California*, 198 Cal. Rptr. 916 (Ct. App. 1984) .........6

8    *Bufil v. Dollar Fin. Group, Inc.*, 76 Cal. Rptr. 3d 804 (Ct. App. 2008) ........................3

9    *Capital People First v. Dep't of Dev. Servs.*, 66 Cal. Rptr. 3d 300 (Ct. App. 2007).........9

10   *City of San Jose v. Superior Court*, 525 P.2d 701 (Cal. 1974) ...............................2, 6

11   *Collins v. Rocha*, 497 P.2d 225 (Cal. 1972) .........................................................3

12   *Daar v. Yellow Cab. Co.*, 433 P.2d 732 (Cal. 1967).............................................2, 6

13   *Evans v. Lasco Bathware, Inc.*, 101 Cal. Rptr. 3d 354 (Ct. App. 2009)........................4

14   *Fireside Bank v. Superior Court*, 155 P.3d 268 (Cal. 2007) ....................................5

15   *Global Minerals & Metals Corp. v. Superior Court*, 7 Cal. Rptr. 3d (Ct. App. 2003)....................4

16   *Harper v. 24 Hour Fitness, Inc.*, 84 Cal. Rptr. 3d 532 (Ct. App. 2008) .........................5

17   *Hopkins v. DeBeers Centenary AG*, CGC-04-432954, 2005 WL 1020868 (Cal. Super. Ct. Apr. 15, 2005) ...............................................................................4, 5

18   *In re Cipro Cases I & II*, 17 Cal. Rptr. 3d 1 (Ct. App. 2004).....................................7

19
20   *In re Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329 (Ct. App. 2010), *review denied* (Apr. 14, 2010), *as modified on denial of reh'g* (Feb. 8, 2010) ..........................3

21   *Lazar v. Hertz Corp.*, 191 Cal. Rptr. 849 (Ct. App. 1983) ......................................5

22   *Lewis v. Robinson Ford Sales, Inc.*, 67 Cal. Rptr. 3d 347 (Ct. App. 2007)......................6, 7, 8

23   *Linder v. Thrifty Oil Co.*, 2 P.3d 27 (Cal. 2000) ...............................................2, 3

24   *Lockheed Martin Corp. v. Superior Court*, 63 P.3d 913 (Cal. 2003) ........................5, 6, 7

25   *McGee v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 131 Cal. Rptr. 482 (Ct. App. 1976)..................9

26   *Occidental Land, Inc. v. Superior Court*, 556 P.2d 750 (Cal. 1976)..............................6

27   *Reyes v. Bd. Of Supervisors*, 242 Cal. Rptr. 339 (Ct. App. 1987) ...............................4

28

Plaintiff's Memorandum in Support                    iv
of Motion for Class Certification

1  *Richmond v. Dart Indus., Inc.*, 629 P.2d 23 (Cal. 1981)..................................................3

2  *Sav-On Drug Stores, Inc. v. Superior Court*, 96 P.3d 194 (Cal. 2004) ...........................3, 7, 8, 10

3  *Seastrom v. Neways, Inc.*, 57 Cal. Rptr. 3d 903 (Ct. App. 2007) ......................................8

4  *Vazquez v. Superior Court*, 484 P.2d 964 (Cal. 1971)..................................................6

5  ***Statutes Cited***

6  Cal. Bus. & Prof. Code §§ 17200, *et seq* .............................................................1

7  Cal. Civ. Code § 382...............................................................................1

8  Cal. Civ. Code § 1781..........................................................................6, 8, 9

9  Cal. Civ. Code §§ 1798.83, *et seq*...............................................................1, 7

10  ***Secondary Sources Cited***

11  Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2002)....................5

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Memorandum in Support             iv
of Motion for Class Certification

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## I. INTRODUCTION

This case presents a textbook class action. California's "Shine the Light Law," Cal. Civ. Code §§ 1798.83, *et seq.*, requires that companies like Defendant Condé Nast Publications ("Condé Nast" or the "Defendant") establish a procedure by which California customers can learn how they disclose the customers' personal information to third parties (the "Shine the Light Disclosures"). Condé Nast collects personal information from its California customers and shares that information with third party advertisers for direct marketing purposes but fails to provide its customers with the Shine the Light Disclosures or means through which the disclosures may be obtained. Defendant's choice to deny its California customers their legal rights to learn what personal information is being disclosed, and who is receiving it, violates the Shine the Light Law with respect to each and every California resident who has provided personal information to Condé Nast.

Plaintiff Brian King is one such customer. Mr. King provided his personal information to Wired Magazine, a Condé Nast publication. Thereafter, Conde Nast failed to provide King with the required Shine the Light Disclosures. In response, Plaintiff brought his class action complaint (the "Complaint") on behalf of a putative class of individuals, alleging violations of California's Shine the Light Law, Cal. Civ. Code §§ 1798.83, *et. seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et. seq.*

As explained below, Plaintiff's proposed class meets each of the prerequisites for class certification under Cal. Civ. Code § 382 and class treatment of the claims alleged in Plaintiff's Complaint is superior to other available methods for the adjudication of the instant dispute. Accordingly, and for the reasons explained below, certification of the class is appropriate and the instant motion should be granted in its entirety. In the alternative, discovery should be allowed to go forward with respect to the class certification issues, if any, that the Defendant contests.

## II. FACTUAL BACKGROUND

### A. Facts Applicable to all Putative Class Members

Condé Nast is a publishing company that publishes over thirty (30) magazines. (Compl. ¶ 6.) Condé Nast collects and stores information about its customers, and shares such information with third party advertising companies. (Compl. ¶¶ 7, 8, 32-35.) Condé Nast collects the information by requiring all of its customers, including those residing in California, to share certain personal information when subscribing to any of its publications, including their names, mailing addresses, e-mail addresses, ZIP codes, telephone numbers, genders, and credit card information. (Compl. ¶¶ 30, 38.) Accordingly, each putative class member, as a Condé Nast subscriber and California resident, necessarily shared personal information with Condé Nast. (Compl. ¶¶ 30, 38.)

Condé Nast shares its customers' personal information with third parties for direct marketing purposes. (Compl. ¶¶ 32.) Unfortunately, however, Condé Nast does not provide its customers with the Shine the Light Disclosures, or the means through which its customers may obtain the Disclosures, as required by the Act. (Compl. ¶ 33.) In addition to stripping its customers of several protections afforded by the Act, Condé Nast's conduct deprives customers of their ability to control the dissemination of their personal information by denying them the ability to ascertain where and how such data is flowing and, as a result, diluting the value of their information as it exists in the personal information market. (Compl. ¶ 21.)

### B. Facts Applicable to Plaintiff Brian King

Like each putative class member in this case, Plaintiff is a California resident, subscribed to a Condé Nast publication—WIRED magazine—and provided personal information to Condé Nast. (Compl. ¶¶ 36, 37.) In fact, Plaintiff provided Condé Nast with his full name, mailing address, e-mail address, ZIP code, telephone number, gender, birth date, and credit card information. (Compl. ¶ 38.) At all relevant times, Plaintiff has used his Condé Nast subscription

1   primarily for personal, family, and household purposes. (Compl. ¶ 39.) Plaintiff has visited both

2   Condé Nast and Wired's respective websites. (Compl. ¶ 39.)

3   **III.    THE PROPOSED CLASS IS BOTH ASCERTAINABLE AND HAS A WELL-**

4   **DEFINED COMMUNITY OF INTEREST AMONG THE CLASS MEMBERS**

5          California courts "long have acknowledged the importance of class actions as a means to

6   prevent a failure of justice in our judicial system." *Linder v. Thrifty Oil Co.*, 2 P.3d 27, 30 (Cal.

7   2000) (citing *City of San Jose v. Superior Court*, 525 P.2d 701, 708 (Cal. 1974); *Daar v. Yellow*

8   *Cab Co.*, 433 P.2d 732, 739 (Cal. 1967)). The question of whether a court should certify a

9   putative class is "essentially a procedural one that does not ask whether an action is legally or

10  factually meritorious." *In re Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329, 335 (Ct. App.

11  2010), *as modified on denial of reh'g* (Feb. 8, 2010) (quoting *Sav-On Drug Stores, Inc. v.*

12  *Superior Court*, 96 P.3d 194, 199 (Cal. 2004)). Rather, "[a] trial court ruling on a certification

13  motion determines 'whether … the issues which may be jointly tried, when compared with those

14  requiring separate adjudication, are so numerous or substantial that the maintenance of a class

15  action would be advantageous to the judicial process and to the litigants.'" *In re Steroid*

16  *Hormone Prod. Cases*, 104 Cal. Rptr. 3d at 335 (quoting *Collins v. Rocha*, 497 P.2d 225, 228

17  (Cal. 1972)). Stated otherwise, "the assessment of suitability for class certification entails

18  addressing whether a class action is superior to individual lawsuits or alternative procedures for

19  resolving the controversy." *Bufil v. Dollar Fin. Group, Inc.*, 76 Cal. Rptr. 3d 804, 812 (Ct. App.

20  2008) (citation omitted).

21          "Section 382 of the Code of Civil Procedure authorizes class suits in California when 'the

22  question is one of a common or general interest, of many persons, or when the parties are

23  numerous, and it is impracticable to bring them all before the court.'" *Linder*, 2 P.3d at 27

24  (quoting *Richmond v. Dart Indus., Inc.*, 629 P.2d 23, 28 (Cal. 1981)). Specifically, certification

25  requires that a party establish both (1) the existence of an ascertainable class and (2) a well-

26  defined community of interest among the class members. *Id.* (citing *Richmond*, 629 P.3d at 27-

27  28). The "community of interest" requirement itself involves three factors: "(1) predominant

28

common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." *Id.* (quoting *Richmond*, 629 P.2d at 28).

Here, the facts and claims of this case readily lend themselves to certification of the following class:

All California residents who have provided personal information to Condé Nast.[2] Accordingly, this Court should certify the proposed class and grant the instant motion in its entirety.

**A.    The Proposed Class Is Readily Ascertainable And So Numerous That Individual Joinder Would Be Impracticable.**

       i.    <u>The Class Is Ascertainable.</u>

The purpose of the ascertainability inquiry is "to give notice to putative class members as to whom the judgment in the action will be *res judicata*." *Aguiar v. Cintas Corp. No. 2*, 50 Cal. Rptr. 3d 135, 146 (Ct. App. 2006). At the class certification stage, ascertainability does not require that a proponent identify individual class members or show that each class member has been injured. *Evans v. Lasco Bathware, Inc.*, 101 Cal. Rptr. 3d 354, 359 (Ct. App. 2009). Rather, a court examines the class definition, the size of the class, and the means available for identifying class members to determine whether the class is ascertainable. *Id.* (citing *Reyes v. Bd. of Supervisors*, 242 Cal. Rptr. 339, 343 (Ct. App. 1987)). Ultimately, "[i]n attempting to define an ascertainable class, the goal is to use terminology that will convey sufficient meaning to enable persons hearing it to determine whether they are members of the class plaintiffs wish to represent." *Global Minerals & Metals Corp. v. Superior Court*, 7 Cal. Rptr. 3d 28, 47 (Ct. App. 2003).

In this case, there is little doubt that the class is ascertainable. First, the proposed class definition, itself, gives each putative class member an objective means for determining whether

---

[2]     Plaintiff anticipates the potential need to revise the class definition following the conclusion of discovery relating to class certification issues.

1  he or she is, in fact, part of the class. People need only determine that (a) they have provided

2  their personal information to Condé Nast (i.e., when signing up for a subscription or otherwise),

3  and (b) they are a California resident. (Compl. ¶ 40.) Second, the class is comprised of a finite

4  number of individuals (*i.e.*, California residents that have provided personal information to

5  Condé Nast). Third, individual class members are identifiable both through the objective criteria

6  spelled out in the class definition and through Defendant's own records, at minimal expense to

7  the parties or the Court. *See, e.g.*, *Hopkins v. De Beers Centenary AG*, CGC-04-432954, 2005

8  WL 1020868, at *3 (Cal. Super. Ct. Apr. 15, 2005) (class was ascertainable where it was

9  "composed of a … self-identifying set of individuals who purchased diamonds … and members

10  [could] be ascertained and [could] identify themselves based upon the purchase of diamonds

11  during the Class period"); *Aguiar*, 50 Cal. Rptr. 3d at 146 (ascertainability requirement was

12  satisfied where "members of plaintiffs' proposed class [could be identified] from … payroll

13  records, which identify each employee by name, job code, dates of employment and rate of

14  pay").

15         Ultimately, any given individual's membership in the class can be determined using

16  precise, objective criteria and can be otherwise verified through reference to Defendant's own

17  records. As a consequence, the Class is ascertainable.

18         ii.    The Class is so Numerous that Joinder of Each Individual Member Would
               be Impracticable.

19         Numerosity is also satisfied in this case. In determining whether a proposed class is

20  sufficiently numerous, the Court may make common sense assumptions, but in any event, "as

21  few as 40 class members should raise a presumption that joinder is impracticable." Alba Conte &

22  Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:5, at 247 (4th ed. 2002); *see also id.* at 243-

23  46 ("Class actions under the amended Rule 23 have frequently involved classes numbering in the

24  hundreds, or thousands … In such cases, the impracticability of bringing all class members

25  before the court has been obvious…."); *see also Lazar v. Hertz Corp.*, 191 Cal. Rptr. 849, 854-

26  55 (Ct. App. 1983); *Hopkins*, 2005 WL 1020868, at *3.

27

28

Plaintiff's Memorandum in Support                    5
of Motion for Class Certification

1   Though it is presently unclear exactly how many members comprise the class, common

2   sense would dictate that many thousands of California residents have subscribed to any one of

3   Condé Nast's thirty (30) publications. In sum, the proposed class satisfies both the

4   ascertainability and numerosity requirements for class certification.

5   **B.   There is a Sufficient Community of Interest to Justify Class Treatment of the Claims at Issue in this Case.**

6   As stated, the second broad requirement for certification—the "community of interest"

7   requirement—"embodies three factors: (1) predominant common questions of law or fact; (2)

8   class representatives with claims or defenses typical of the class; and (3) class representatives

9   who can adequately represent the class." *Harper v. 24 Hour Fitness, Inc.*, 84 Cal. Rptr. 3d 532,

10   538 (Ct. App. 2008) (citing *Fireside Bank v. Superior Court*, 155 P.3d 268, 282 (2007)). "[T]his

11   means 'each member must not be required to individually litigate numerous and substantial

12   questions to determine his [or her] right to recover following the class judgment; and the issues

13   which may be jointly tried, when compared with those requiring separate adjudication, must be

14   sufficiently numerous and substantial to make class action advantageous to the judicial process

15   and to the litigants." *Harper*, 84 Cal. Rptr. 3d at 538 (quoting *Lockheed Martin Corp. v. Superior

16   *Court*, 63 P.3d 913, 920 (Cal. 2003) (internal quotations omitted)). As shown below, common

17   questions of law and fact predominate over issues affecting only individual members of the

18   proposed class, Plaintiff's claims are typical of those of the other members of the class, and he

19   and his counsel will continue to adequately represent the interests of the proposed class.

20   i.   Common Questions of Law and Fact Predominate.

21   Under Cal. Civ. Code § 1781(b)(2), the "common questions" requirement for class

22   certification looks to whether "[t]he questions of law or fact common to the class are

23   substantially similar and predominate over the questions affecting the individual members." *Id.*

24   Although common questions of law or fact must predominate, Plaintiff is not required to show

25   that there is complete absence of individual issues. *See Daar*, 433 P.2d at 742-43. Rather, the test

26   of predominance is whether the common questions are "the principal issues in any individual

27

28

1  action, both in terms of time to be expended in their proof and of their importance, [so] that if a

2  class suit were not permitted, a multiplicity of legal actions dealing with identical basic issues

3  would be required in order to permit recovery by each [absent class member]." *Vasquez v.*

4  *Superior Court*, 484 P.2d 964, 970 (Cal. 1971). Stated otherwise, a class is not certifiable "where

5  there are diverse factual issues to be resolved, even though there may be many common

6  questions of law … [or] where each member's right to recover depends on facts peculiar to his

7  case[.]" *Basurco v. 21st Century Ins. Co.*, 133 Cal. Rptr. 2d 367, 373 (Ct. App. 2003) (citing

8  *Brown v. Regents of University of California*, 198 Cal. Rptr. 916, 919-20 (Ct. App. 1984); *City of*

9  *San Jose v. Superior Court*, 525 P.2d 701, 709 (Cal. 1974)). Common issues are typically found

10 to be present where, as in this case, a defendant's alleged conduct is the same with regard to each

11 putative class member. *Lockheed*, 63 P.3d at 919; *see also Occidental Land, Inc. v. Superior*

12 *Court*, 556 P.2d 750, 754 (Cal. 1976).

13     The common questions requirement is principally a "practical consideration," and trial

14 courts are left with the "discretion … to evaluate the efficiencies and practicalities of permitting

15 group action[.]" *Lewis v. Robinson Ford Sales, Inc.*, 67 Cal. Rptr. 3d 347, 352 (Ct. App. 2007);

16 *see also id* ("For example, trial courts can fashion methods to manage individual questions that

17 are 'procedurally innovative'") (quoting *Sav-On*, 96 P.3d at 208); *see also In re Cipro Cases I &*

18 *II*, 17 Cal. Rptr. 3d 1, 6 (Ct. App. 2004). "[T]o determine whether common questions of fact

19 predominate the trial court must examine the issues framed by the pleadings and the law

20 applicable to the causes of action alleged." *Ali v. U.S.A. Cab Ltd.*, 98 Cal. Rptr. 3d 568, 578 (Ct.

21 App. 2009).

22     In this case, members of the classes share an almost identical common core of facts. First,

23 each putative class member is a California resident that provided personal information to Condé

24 Nast during the relevant time period—a simple "did they or didn't they?" (Compl. ¶¶ 30, 38.)

25 Second, and as alleged under Plaintiff's theory of the case, Condé Nast's liability under the

26 Shine the Light Law stems from its failure to include certain disclosures on its website that are

27

28

---

Plaintiff's Memorandum in Support            7
of Motion for Class Certification

mandated by the Act—a fact that applies to each class member in the same way. (Compl. ¶ 54.) In particular, Condé Nast violates the Act by (i) failing to add a hyperlink entitled "Your Privacy Rights" to its home page, (ii) failing to add a hyperlink on its home page to a page titled "Your Privacy Rights," (iii) failing to designate a mailing address, e-mail address, telephone number, or facsimile number for customers to deliver requests, and/or (iv) failing to describe its California customers' rights under the Shine the Light Law. *See* Cal. Civ. Code § 1798.83(b)(1)(B). (A true and accurate copy of Condé Nast's home page and privacy policy is attached as Exhibits A and B, respectively.) Simply put, there are no relevant factual differences between class members, in terms of their own conduct, or Defendant's action, or inaction, with respect to the class members.

Furthermore, the Defendant's liability with respect to the claims alleged in this action will necessarily be the same for all class members. If Plaintiff is correct that Defendant's failure to provide Shine the Light disclosures on its website gives rise to liability, then Defendant is identically liable to each and every member of the class. Moreover, Plaintiff's UCL claim— which relies wholly on the statute's "unlawful" prong—rises or falls with Defendant's liability under the Shine the Light Law. As such, the legal questions in this case are identical for all class members.

Ultimately, there should be no question that the primary legal and factual questions outlined in Plaintiff's Complaint and as discussed herein, are common to each class member and predominate over issues, if any do exist, affecting only individual members of the classes. Accordingly, and because each of the claims and the respective elements thereof may be proven using the same common set of evidence as described herein, Plaintiff's "theory of recovery … is, as an analytical matter, likely to prove amenable to class treatment." *Lewis*, 67 Cal. Rptr. 3d at 352; *see also Id.* ("[C]ourts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question") (quoting *Sav-on Drug Stores*, 96 P.3d at 200). Common questions therefore predominate.

---

Plaintiff's Memorandum in Support
of Motion for Class Certification

8

ii.     Plaintiff's Claims Are Typical of the Claims of the Other Members of the Class.

Pursuant to Cal. Civ. Code § 1781(b)(3), Plaintiff's claims—as the representative of this case—must be typical of the claims of the other putative class members. Generally speaking, the typicality requirement refers to the idea that Plaintiff's claims arise from the same general conduct as those of the class. *Seastrom v. Neways, Inc.*, 57 Cal. Rptr. 3d 903, 908 (Ct. App. 2007). The existence of factual differences, however, will not preclude a finding of typicality. *Id.* Thus, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

In this case, Plaintiff's claims are typical of those of his fellow class members. Plaintiff, like each and every member of the class: (1) had provided personal information to Condé Nast (i.e., signed up for a subscription to a Condé Nast publication) and (2) is a California resident. (Compl. ¶¶ 30, 38.) Furthermore, and like each and every member of the class, Plaintiff was denied the ability to exercise his legally prescribed right under the Shine the Light Law because of Defendant's failure to include the requisite disclosures on its website. (Compl. ¶¶ 32-35, 55, 56.)

Consequently, just as there is no relevant difference among the claims of each class member, so too is there no relevant difference between Plaintiff's claims and those of the putative class members. As such, Plaintiff's claims are typical of those of the class.

iii.     Plaintiff and His Counsel Have and Will Continue to Adequately Represent the Interests of the Proposed Class.

The final requirement to establish a community of interest looks to whether "[t]he representative plaintiff[] will fairly and adequately protect the interests of the class." Cal. Civ. Code § 1781(b)(4). The "adequacy" element requires that two factors be satisfied. First, the class representative's personal claims must be consistent with the claims of the other members of the proposed class. *Capital People First v. Dep't of Dev. Servs.*, 66 Cal. Rptr. 3d 300, 317 (Ct. App. 2007). Second, the proposed representative's counsel must have the experience, skills, and

1    resources necessary to conduct the litigation. *McGhee v. Bank of Am. Nat'l Trust & Sav. Ass'n*,

2    131 Cal. Rptr. 482, 487 (Ct. App. 1976).

3           In this case, Plaintiff has the same interests as the proposed class members. Plaintiff has

4    alleged that Defendant deprived him of his statutorily proscribed privacy protections, and

5    profited from sharing his personal information without giving him the ability to control or

6    otherwise learn about the dissemination of that information. (Compl. ¶¶ 32-35, 54, 55.) As a

7    result, and like the other members of the class, Plaintiff's interests lie in enforcing his statutory

8    rights under the Shine the Light Law, regaining a meaningful choice as to how his personal

9    information is shared, and ensuring that Defendant corrects its conduct moving forward.

10   Accordingly, Plaintiff has no interests antagonistic to those of the class.

11          Similarly, Plaintiff's attorneys are well-respected members of the legal community, who

12   have extensive experience in class actions of similar size, scope, and complexity to the instant

13   action. Moreover, they have regularly engaged in major complex litigation involving the Internet

14   and consumer technology issues, and have the resources necessary to conduct litigation of this

15   nature. Not surprisingly, then, Plaintiff's counsel have already diligently investigated,

16   prosecuted, and dedicated substantial resources to the investigation of the claims at issue in this

17   action, and will continue to do so throughout its pendency. (*See* Firm Resume of Edelson

18   McGuire, LLC, a true and accurate copy of which is attached as Exhibit C.)

19          Both Plaintiff and his counsel will adequately represent the class. The adequacy of

20   representation prerequisite is satisfied.

21   **C.   Class Treatment is the Superior Method for Adjudication of the Claims at Issue in this Case.**

22          The final, and perhaps most important, requisite to class certification is a determination

23   whether the class mechanism is superior to all other available methods for adjudication of the

24   controversy at hand. To determine whether class treatment is superior, courts typically look to (i)

25   the interest of each member in controlling his or her own case personally; (ii) difficulties that are

26   likely to be encountered in managing a class action; (iii) the nature and extent of any litigation by

27

28

1  individual class members already in progress; and (iv) the desirability of consolidating all claims

2  in a single action before a single court. *Ali*, 98 Cal. Rptr. 3d at 584.

3       Absent class treatment in this case, each individual member of the classes would be

4  required to present the same or essentially the same legal and factual arguments, in separate and

5  duplicative proceedings, the result of which "would be a multiplicity of trials conducted at

6  enormous expense to both the judicial system and the litigants." *Sav-On Drug Stores*, 17 Cal.

7  Rptr. 3d at 923. "It would be neither efficient nor fair to anyone, including defendants, to force

8  multiple trials to hear the same evidence and decide the same issues." *Id*. Moreover, there is no

9  indication that members of the classes have a strong interest in individual litigation, let alone any

10  disincentive to pursue their claims in a class action, given the small amount of damages likely to

11  be recovered relative to the resources required to prosecute such an action. Class certification

12  will also promote consistency of rulings and judgments, giving all parties the benefit of finality.

13       Thus, class treatment of the claims alleged in this action is superior to all other available

14  methods of adjudication, satisfying the final requisite to certification.

15  **IV.    CONCLUSION.**

16       For the foregoing reasons, Plaintiff Brian King, respectfully requests that the Court grant

17  the instant motion and enter an Order: (i) certifying the proposed class as defined herein; (ii)

18  appointing Plaintiff class representative and his counsel Class Counsel; (iii) requiring that notice

19  of class certification be sent to all putative class members; (iv) providing leave to take discovery

20  relevant to any class certification requirements that the Defendant claims are unmet in this case,

21  and (v) providing such other and further relief as the Court deems equitable and just.

22

23

24

25

26

27

28

Plaintiff's Memorandum in Support                    11
of Motion for Class Certification

Dated: December 23, 2011

**BRIAN KING,** INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

By: /s/ Sean Reis
One of Plaintiff's Attorneys

SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

*Counsel for Plaintiff and the putative class*

# EXHIBIT A



# CONDÉ NAST

CONDÉ NAST DIGITAL

FAIRCHILD FASHION MEDIA

CONDÉ NAST STORE

THE CARTOON BANK

CONDÉ NAST HOME

MEDIA KITS

SUBSCRIBE

CAREERS

PRESS ROOM

**Provocative, influential, award-winning content.
Across brands. Across platforms. Across continents.**

Get ADOBE
FLASH PLAYER

VISIT OUR SITES

Vogue
W
WWD
Style
Glamour
Allure
Self
Nutrition Data
Teen Vogue
GQ
Details
Architectural Digest
Brides
Lucky
FN
Golf Digest
Golf World
Vanity Fair
Bon Appétit
Epicurious
Condé Nast Traveler
Concierge
Jaunted

open in browser  PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

open in browser PRO version   Are you a developer? Try out the HTML to PDF API



pdfcrowd.com